No. 48,203

Robert Sherman Oswald, *Appellant,* v. State of Kansas, *Appellee.*

(561 P. 2d 838)

Opinion filed March 5, 1977.

*Laurence R. Hollis* of Merkel & Hollis, Chartered, of Wichita, argued the cause, and *Cecil E. Merkel,* of the same firm was with him on the brief for the appellant.

*Stephen M. Joseph,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *Vern Miller,* District Attorney, and *Robert L. Kennedy, Jr.,* Assistant District Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Petitioner, Robert Sherman Oswald, appeals from a ruling of the trial court denying relief in proceedings under K. S. A. 60-1507. The principal issue raised in his 60-1507 motion involves the adequacy of counsel afforded petitioner nearly twelve years ago when he was tried and convicted of grand larceny in the District Court of Sedgwick County.

On February 16, 1965, petitioner was arrested in Jackson County, Missouri, in possession of thirty-five tires allegedly taken from a Goodyear tire store in Wichita. He was charged with felony theft of the tires, and was subsequently tried and convicted on this charge. He was represented through the preliminary hearing and the jury trial by his retained counsel, Cliff W. Ratner, an experienced attorney practicing in Wichita.

Petitioner retained different counsel and took a direct appeal from the conviction which resulted in an affirmance of the judgment. (*State v. Oswald,* 197 Kan. 251, 417 P. 2d 261.) It should be noted the adequacy of representation afforded petitioner at trial was not raised or considered in this direct appeal.

Subsequent to the disposition of the direct appeal petitioner filed his first 60-1507 motion *pro se* on April 26, 1968. Apparently, this motion was summarily denied and petitioner filed a notice of appeal from the adverse determination. However, this appeal was never perfected. The state's brief asserts that "inadequate counsel" was specified as a ground for relief in this 60-1507 motion and the trial court overruled the motion, as further set out in the state's brief:

". . . specifically finding that the defendant had been represented by trial counsel of his own choice and that no complaints with respect to that trial counsel had been raised by defendant at his trial, in his motion for new trial or in his direct appeal. . . ."

Unfortunately, as was the case when this appeal was last before this court (*Oswald v. State,* 214 Kan. 162, 519 P. 2d 624), there is nothing included in the record to show what issues were raised and determined in this first 60-1507 motion.

On July 15, 1971, petitioner filed a second 60-1507 motion, the primary ground of which was inadequate representation. This second motion is the subject of the present appeal. At the first evidentiary hearing on the motion, petitioner was represented by

Stephen B. Millin of the Missouri Bar and by Ernest McRae of Wichita who was associated as local counsel only. For reasons not of record, the hearing was recessed and continued several times and was conducted in piecemeal fashion over several months. On December 2, 1971, Mr. McRae was permitted to withdraw and Orval Fisher was appointed as local counsel. The hearing was reconvened on December 29, 1971. Although notified of the hearing, Missouri counsel failed to appear. Mr. Fisher was, of record, local counsel only, and, thus, not prepared to actively represent the petitioner. The sentencing court denied Mr. Fisher's motion for a continuance and permitted the state to proceed. Fisher neither cross-examined witnesses nor presented any closing argument. At the conclusion of the hearing, the trial court held that petitioner was not entitled to relief.

Petitioner subsequently filed a motion for a new hearing or discharge. Both Millin and Fisher participated in the hearing on this motion, held on January 21, 1972. After this motion was denied, petitioner wished to appeal the adverse ruling and Laurence R. Hollis of Wichita was appointed to prosecute the appeal.

On appeal this court held the trial court abused its discretion in, *inter alia,* refusing to grant a continuance when petitioner's local counsel appeared alone and admittedly unprepared. (*Oswald v. State,* supra.) This court reversed with directions to grant a new hearing on the motion.

Prior to this new hearing, several preliminary motions were filed, the disposition of which gives rise to the petitioner's first point on appeal. On July 9, 1974, petitioner's appointed counsel, Mr. Hollis, filed a motion to withdraw as counsel for the 60-1507 hearing. On August 14, 1974, petitioner filed a motion for change of judge, pursuant to K. S. A. 20-311d, with an affidavit attached averring that Judge Raum was biased and prejudiced against his case. Judge Raum presided at petitioner's jury trial, pronounced sentence and also heard and decided petitioner's first 60-1507 motion.

The matter was later returned to Judge Raum's court where, after a three-day evidentiary hearing, the court found in pertinent part:

". . . [T]he petitioner has not met his burden of proof and that petitioner's counsel in the criminal trial number CR 1729 afforded petitioner effective assistance of counsel. The Court further finds that this motion should be denied."

Thereafter this appeal was perfected.

Petitioner specifies two points on appeal, the first of which is

directed at rulings on the three preliminary motions filed by petitioner. The preliminary rulings complained of were made by the Honorable Howard Kline, administrative judge of the district court.

Petitioner's first contention concerns Judge Kline's denial of petitioner's motion for a change of judge, pursuant to K. S. A. 20-311d. The thrust of the motion was to remove Judge Tom Raum from the 60-1507 proceedings. Judge Raum, as previously indicated, was the "sentencing judge" and he had presided at petitioner's trial. In support of his motion, petitioner filed an affidavit which reads in part:

"3. This affiant firmly, sincerely, honestly and in good faith believes that Judge Tom Raum is personally biased and prejudiced against my case and myself and that any further proceedings I might have in front of said Honorable Tom Raum would result in an adverse ruling concerning my case and cause and, further, I sincerely and honestly believe that I will not be afforded a fair and impartial hearing if Judge Raum is allowed to preside at the said hearing."

The remainder of petitioner's affidavit consists of a recitation of Judge Raum's adverse rulings in connection with petitioner's jury trial and prior 60-1507 proceedings which we have described above.

Petitioner first argues that Judge Kline should not have heard the motion for change of judge. K. S. A. 20-311d provides the procedure for a change of judge, sets forth the grounds to effect such change and the requirement that a legally sufficient affidavit be filed. Upon the filing of an affidavit for a change of judge in a multidivision district court such as Sedgwick, subsection (a) of the statute provides in pertinent part:

"(a) If either party to an action in a district court files an affidavit alleging any of the grounds specified in subsection (b) the administrative judge shall at once *transfer the action to another division* of the court if there is more than one division, or shall request a judge of another judicial district be assigned to preside in such cause. . . ." (Emphasis supplied.)

Petitioner took the position below and maintains it on appeal that when an affidavit for change of judge comes before an administrative judge in a multidivision district, he must immediately assign the matter to "another" division for the determination of the legal sufficiency of the affidavit. Petitioner projects this argument by extracting the phrase "to another division" from its context and argues that it means that transfer must be to a division other than that of the administrative judge. We cannot agree. Where an affidavit of prejudice is filed against a judge of a multidivision

district and comes before the administrative judge for determination of the legal sufficiency of such affidavit, the secondary transfer to still another judge would serve no useful purpose, and it is not required by the statute.

The transcript of the proceedings, which we have at hand, discloses that in answer to petitioner's argument, Judge Kline responded:

"Well, the Court has consistently held that the Administrative Judge or the acting Administrative Judge if the Administrative Judge is gone, then that particular Judge shall hear motions to disqualify other members of this Court unless there has been an affidavit filed to disqualify the Administrative Judge for some reason other than administrative functions. So, I'm going to overrule your motion to have some other Judge hear the motion."

All of the provisions of 20-311d were considered in *Hulme v. Woleslagel,* 208 Kan. 385, 493 P. 2d 541. With reference to the question of a transfer as raised herein we said:

". . . Transfer to another judge is the statute's first command and we believe the legislature intended by the use of such imperative that transfer is to be automatic upon filing of an affidavit. With this in mind we further believe the hearing proviso contemplates the use of a second judge—the one to whom the case is transferred or assigned. In reaching this conclusion we note the obvious dissatisfaction arising from the somewhat incongruous federal practice of having the challenged judge sit in judgment on the legal sufficiency of the challenge against him. . . ." (p. 393.)

We believe, in accord with what was said in *Hulme,* that, unless the administrative judge is also challenged, his administrative division falls within the phrase "another division," as it is employed in the statute. The intent of the statute, as interpreted in *Hulme,* is to prevent the challenged judge from determining the legal sufficiency of the affidavit. The assuming of jurisdiction, by the administrative judge, to determine the legal sufficiency of an affidavit filed against a judge in a multidivision district, is, in effect, a transfer to another division. We believe such procedure accords with the statute, and where an affidavit has not been filed against the administrative judge, it is the most orderly and efficient method to effect the statutory mandate. We find no error in the procedure employed in this regard.

On the merits of the question whether the affidavit was legally sufficient, we believe Judge Kline's ruling was correct. Examination of the averments of petitioner's affidavit reveals that his only basis for claiming prejudice was the fact that Judge Raum had previously ruled adversely to him and that on one occasion a decision had been reversed. Prior adverse rulings, standing alone,

are insufficient to disqualify a judge. In our analysis of 20-311d in *Hulme v. Woleslagel,* supra, we held:

". . . (10) previous adverse rulings of a trial judge, although numerous and erroneous, where they are subject to review, are not ordinarily and alone sufficient to show such bias or prejudice as would disqualify him as judge; . . ." (Syl.)

See, also, *Sheldon v. Board of Education,* 134 Kan. 135, 4 P. 2d 430.

We turn next to Judge Kline's refusal to grant a change of venue. Assuming, but not deciding, the availability of a motion for a change of venue in connection with a nonjury 60-1507 motion, the record is insufficient to support a change of venue. The controlling rule is set forth in our holding in *State v. Anderson,* 202 Kan. 52, 446 P. 2d 844:

"In a criminal action on a motion for change of venue the burden of proof is upon the defendant to make it affirmatively appear that such prejudice exists in the community that it will be reasonably certain he could not obtain a fair trial. Failing in such proof the defendant cannot be heard to complain of the trial court's order overruling his motion." (Syl. 1.)

On this issue we further held in *State v. Lamb,* 209 Kan. 453, 497 P. 2d 275:

"The trial court may, in its discretion, properly deny a motion to change venue, when the defendant in a criminal action fails to present affirmative evidence that prejudice exists so as to make it reasonably certain he cannot obtain a fair trial." (Syl. 2.)

See, also, *State v. Colin,* 214 Kan. 193, 519 P. 2d 629; and *State v. Poulos,* 196 Kan. 253, 411 P. 2d 694, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63.

The thrust of petitioner's argument for a change of venue, as in the case of his motion for change of judge, goes to the previous adverse rulings by Judge Raum. Petitioner failed to present any other affirmative evidence that prejudice existed so as to make it reasonably certain that he could not obtain a fair hearing. As in the case of a motion for a change of judge, previous adverse rulings, standing alone, are insufficient to support a motion for change of venue. We find no abuse of discretion by Judge Kline in this regard.

We turn now to Judge Kline's denial of petitioner's present appointed counsel's motion to withdraw. This motion alleged, in brief, that counsel had little experience in criminal law and that in view of petitioner's "attitude toward attorneys" it would be better for all concerned if more "experienced" counsel were appointed. At the hearing on the motion, the transcript of which we have

examined, however, counsel merely argued that representation of a 60-1507 petitioner, who was attacking the competency of a fellow attorney, was a distasteful matter. We sympathize with counsel's feelings in this regard, but we cannot agree with his premise that distasteful representation is sufficient grounds for withdrawal from the case. After arguments on the motion, Judge Kline ruled:

"If I were to relieve you of this representation, it would mean that I will have to appoint some other attorney to represent Mr. Oswald, and Mr. Oswald, I'm sure, is very satisfactory with you up to this point at least, and any other attorney I might appoint might be very critical of the appointment. The Court is going to deny your request for withdrawal as counsel of record in this case. I understand your position and I appreciate it, but I'm just going to deny it. Now, with reference to the question of incompetency of counsel, if I were to relieve you of your duty because it's distasteful to you to raise that question, I'm sure it would be true in most of the 1507's that are filed here. As Mr. Hollingsworth [deputy district attorney] has said, they always or almost always complain about inadequacy of counsel after they have been convicted, never before. Of course, if I relieve you on that basis, I'll have to relieve practically every member of the Bar that's appointed on a 1507 here, so your application to withdraw will be denied."

Whether to discharge an indigent defendant's present counsel and appoint new counsel is a matter vested in the sound discretion of the trial court. (*State v. Way*, 204 Kan. 375, 461 P. 2d 820.)

General Standard 8.6 of ABA Standards, The Defense Function [Approved Draft 1971, p. 170], defines the duties of a defense attorney when faced with a client's claim of ineffectiveness of previous counsel. The Commentary on Standard 8.6 (a) in pertinent part reads as follows:

". . . The traditional position of the bar that a lawyer must stand ready to challenge the conduct of a colleague where that is necessary to the protection of his client's rights is an essential of our system of justice. Nothing would be more destructive of the goals of effective assistance of counsel and justice for each defendant than to immunize the misconduct of a lawyer by the unwillingness of his brother lawyers to expose his inadequacy. Lawyers must be especially careful to avoid permitting their personal regard for a fellow lawyer to blind them to his failure to provide the effective assistance to which every defendant is entitled as a matter of constitutional right. Of course, a lawyer owes it to the lawyer attacked, as he would to the person who is the object of any legal attack, not to proceed in a matter which is not grounded in fact and law and is merely vindictive and intended to harass the accused lawyer or the courts. . . ." (pp. 307-308.)

Under the circumstances we do not find an abuse of discretion in Judge Kline's ruling and it accords with the standard quoted. After his motion to withdraw, counselor Hollis preceeded to conscientiously represent his client. Our examination of the transcript

of the three-day hearing reflects a vigorous and skillful, albeit unsuccessful representation of petitioner.

In his second and final point on appeal petitioner contends the trial court erred in failing to find that the representation afforded him at trial was constitutionally inadequate and in failing to grant relief on that issue. In view of this contention we have carefully examined the two volume transcript of the 1965 trial. It reflects a vigorous cross-examination of all of the state's witnesses and a presentation of the defense in the best light possible under the circumstances. We also learned that Mr. Ratner was successful, at preliminary hearing, in disposing of a burglary count which had been lodged against petitioner in the original complaint. Mr. Jack Focht, an experienced criminal attorney in both prosecution and defense, was the prosecutor at trial and was called as a witness in the 60-1507 hearing. Mr. Focht, when asked for his opinion of Mr. Ratner's conduct of the trial, testified:

"Q. All right, and what is that opinion?
"A. My opinion is that it was an excellent defense, and I would like to explain.
"Q. All right, would you please?
"A. We started out charging Mr. Oswald with Burglary and Larceny. At the preliminary hearing, as I recall, and I might be mistaken there, Mr. Ratner got knocked out, beat me on the burglary charge, so the only thing we went to a jury with was Larceny, and I thought he did a fine job of it, of handling his defense."

Petitioner's primary complaint in this 60-1507 proceeding is that Mr. Ratner did not make adequate efforts toward procuring the testimony at trial of Arthur McKenna, Jr., who was the assistant manager of the Goodyear tire store at the time the tires were stolen. Petitioner claimed that McKenna would testify that the tire transaction was legitimate and, thus, would vindicate petitioner. However, petitioner vacillated to a considerable degree on this point in his testimony at the 60-1507 hearing.

Mr. Ratner testified the Oswalds told him that McKenna was somehow involved in the transaction, but that he was unable to get any clear or positive statements from the Oswalds in this regard. Mr. Ratner learned that Mr. E. Lael Alkire was McKenna's attorney. Ratner had several conferences with Mr. Alkire prior to trial and was informed that McKenna was out of the state and would not be available for trial. Alkire also told Ratner that if McKenna ". . . should be caught by a subpoena he would not testify as to any of the facts in the case. If he was put on the

stand, he'd take the Fifth Amendment." Nevertheless, Mr. Ratner made further attempts to locate McKenna. He inquired at the Goodyear store and contacted other persons. At the suggestion of Oswald he attempted to telephone McKenna at his mother's home in Junction City. Mr. Ratner also testified that as a result of his experience in criminal cases, McKenna's assertion of his Fifth Amendment rights before the jury would severely hurt petitioner's chances of acquittal.

The testimony of petitioner and his wife was, on some points, in conflict with that of Mr. Ratner. Petitioner never clearly explained his relationship with McKenna or precisely how his testimony would have helped the case. It is difficult to ascertain from petitioner's transcript testimony whether he actually wanted McKenna located and put on the stand.

In recent years this court has had a good deal to say on the subject of effective counsel, the sum total of which has been that before it can be said there has been a denial of the constitutional right to counsel, it must clearly appear that the representation afforded an accused was wholly ineffective and inadequate. (*Trotter v. State*, 218 Kan. 266, 543 P. 2d 1023; *Peterson v. State*, 215 Kan. 253, 524 P. 2d 740; and *Reid v. State*, 213 Kan. 298, 515 P. 2d 1040.)

In the case at bar the trial court made a specific finding that petitioner was adequately represented by competent counsel. There is ample evidence in the record presented to support the finding. The burden of establishing the ineffective assistance of counsel to the extent necessary to overcome the presumption of regularity of a conviction is upon the petitioner. (*Burns v. State*, 215 Kan. 497, 524 P. 2d 737; and *Baker v. State*, 204 Kan. 607, 464 P. 2d 212.) We have also said on frequent occasions that the adequacy of an attorney's services to his client must be gauged by the totality of his representation. (*Reid v. State*, supra; and *Johnson v. State*, 210 Kan. 498, 502 P. 2d 838.)

Petitioner's present counsel, in the lengthy evidentiary hearing below, thoroughly examined Mr. Ratner's representation of petitioner before and during his trial. On appeal, counsel has meticulously combed the transcripts of the trial and the evidentiary hearing and picked at every move of Mr. Ratner that might be suspect. In an abundance of caution, we, likewise, have scrutinized with care the transcripts which have been submitted to us, only to arrive at the same conclusion as the trial court, that Mr. Ratner adequately and competently represented the petitioner. Mr. Ratner

effected a dismissal of the burglary charge at preliminary hearing and his investigation of the case and strategy at trial cannot be faulted under the circumstances shown to exist. The representation afforded petitioner, before and during trial, certainly could not be described as token representation.

The judgment is affirmed.