(582 P.2d 292)
No. 49,317

Mrs. J. W. Schoonover, a/k/a Nellie L. Schoonover, *Appellant,*
v. State of Kansas, *Appellee.*

Petition for review denied September 13, 1978.

Opinion filed August 4, 1978.

*Thomas E. Gleason, Jr.,* of Thomas E. Gleason, Chartered, of Ottawa, for the appellant.

*James W. Clark,* county attorney, for the appellee.

Before Foth, C.J., Parks and Swinehart, JJ.

Foth, C.J.: This is an appeal from the dismissal as an abuse of

the remedy of petitioner's second motion under K.S.A. 60-1507 to vacate her conviction of first degree murder.

Petitioner was convicted in 1974 and appealed. She abandoned her direct appeal following the institution of her first 1507 action, in which she alleged that she had been denied effective assistance of counsel at her trial. The trial court denied that petition and the denial was affirmed in *Schoonover v. State*, 218 Kan. 377, 543 P.2d 881 (1975), *cert. den.* 424 U.S. 944, 47 L.Ed.2d 349, 96 S.Ct. 1412 (1976). Petitioner brought this second 1507 action, alleging once again that she was denied effective assistance of counsel at her murder trial. She contended that both unusual circumstances and a change of law justified the successive petition. She also moved that the judge who presided at her trial and heard her first motion disqualify himself.

The trial judge first denied the motion to disqualify himself. On the proffered justifications for the successive motion he ruled as a matter of law that there had been no intervening change of law since the first motion. On the remaining issue he conducted an evidentiary hearing to determine whether her retained counsel at the first collateral proceeding failed or were prevented from fully developing the alleged inadequacy of her trial counsel. At the conclusion of this limited hearing, the judge ruled that petitioner had failed to prove unusual circumstances justifying the bringing of a second 1507 motion and sustained the state's motion to dismiss. She appeals, challenging all three rulings.

1. Her argument for disqualification is that the judge who conducted the trial—and particularly one who has already heard one motion to vacate—cannot impartially evaluate the fairness of the prior proceedings.

The argument runs directly contrary to the legislative philosophy behind the enactment of 60-1507, which in 1964 replaced collateral attacks by habeas corpus in the county of confinement with a motion to vacate in the court of conviction. One obvious purpose of the change was to bring into play the familiarity of the original trial judge with the case.

Our present procedure was borrowed from and parallels the similar procedure for collateral attack by motion in federal courts by federal prisoners, 28 U.S.C. § 2255. In construing the federal statute the federal courts have been unanimous: *Wagner v. United States*, 418 F.2d 618 (9th Cir. 1969) (a trial judge is not disquali-

fied from conducting proceedings on a second motion attacking a sentence because he tried the case against petitioner and passed on the first motion attacking the sentence); *Panico v. United States,* 412 F.2d 1151 (2d Cir. 1969), *cert. den.* 397 U.S. 921, 25 L.Ed.2d 102, 90 S.Ct. 901 (1970) (one of the purposes for which Congress passed Section 2255 was to make use of the personal observations of the trial judge of trial occurrences in ruling upon attacks on convictions because of such occurrences); *Mirra v. United States,* 379 F.2d 782 (2d Cir. 1967) (the fact that personal observations by the judge on trial necessarily enter into his rulings in a 2255 action is not cause for disqualification); *Walters v. United States,* 404 F. Supp. 996 (S.D.N.Y. 1975), affirmed 542 F.2d 1166 (2d Cir. 1976) (the mere fact that the same judge who presided at trial now rules on the petitioner's motion is not cause for disqualification. Indeed, one of the purposes of 28 U.S.C. § 2255 was to permit the trial judge, because of his familiarity with the original proceedings and ability to supplement the record, to hear motions collaterally attacking the trial process).

Kansas cases and our statute governing disqualification also indicate that prejudice will not be assumed from the fact that the judge presided over other hearings involving the same litigants. For example, in *Oswald v. State,* 221 Kan. 625, 561 P.2d 838 (1977), the court rejected the argument that an affidavit stating that the trial judge was biased and had made numerous rulings adverse to petitioner in his criminal trial and his first 1507 motion required a change of judges. See also *Hulme v. Woleslagel,* 208 Kan. 385, 493 P.2d 541 (1972), and *Sheldon v. Board of Education,* 134 Kan. 135, 4 P.2d 430 (1931), for applications of the rule that previous adverse rulings of a trial judge, although numerous and erroneous, are not ordinarily and alone sufficient to show such bias or prejudice as would disqualify him.

Our statute governing disqualification of judges states that a party may secure a change of judge on account of prejudice by filing an affidavit stating *facts* and *reasons* to support an allegation of actual prejudice. K.S.A. 20-311d(*b*)(5). Petitioner's only reason was legally insufficient and the trial judge properly denied the motion.

2. Petitioner's "intervening change of law" argument is based on an evolving judicial doctrine which, she says, holds trial counsel to a higher standard of competence than that previously

recognized in Kansas. Her argument is that her trial counsel's performance may have met the old, lower standard applied in her first 1507 proceeding, but it does not meet the new, higher standard which she says should now be adopted in this state.

A leading case in the area is *United States v. DeCoster,* 487 F.2d 1197 (D.C. Cir. 1973). There the court noted that its earlier language, requiring counsel's performance to be so bad as to render the trial a "farce and mockery" in order to be deemed "ineffective," had since been repudiated as a literal formulation of the applicable test. Rather, it was but "a vivid description of the principle that the accused has a heavy burden in showing requisite unfairness." (p. 1201.) In that case the court went further and adopted a black-letter standard for judging a defendant's Sixth Amendment right to counsel: *"a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate."* (p. 1202. Emphasis in original.) The court went on to say that, in general, counsel should be guided by the American Bar Association Standards for the Defense Function.

Similar language may be found in other federal and state decisions. *E.g., Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970) (exercise the customary skill and knowledge which normally prevails at the time and place); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir. 1975) (a minimum standard of ·professional representation); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974) (reasonably effective assistance); *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir. 1968), *cert. den.* 393 U.S. 849, 21 L.Ed.2d 120, 89 S.Ct. 80) (list of detailed requirements to be effective); *Crismon v. United States,* 510 F.2d 356, 358 (8th Cir. 1975) (customary skill and diligence of reasonably competent attorney); *Risher v. State,* 523 P.2d 421 (Alaska 1974) (lawyer with ordinary training and skill in criminal law); *People v. White,* 182 Colo. 417, 514 P.2d 69, 72 (1973) (competent counsel well-prepared to serve client); *Pitts v. Glass,* 231 Ga. 638, 639, 203 S.E.2d 515, 517 (1974) (reasonable effectiveness at time services rendered); *State v. Kahalewai,* 54 Hawaii 28, 30, 501 P.2d 977, 979 (1972) (not errorless, but within range of competence in criminal cases); *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975) (reasonably competent assistance of counsel acting as diligent conscientious advocate); *State v. Massey,* 207

N.W.2d 777, 780 (Iowa 1973) (within range of normal competency); *Commonwealth v. Saferian,* 366 Mass. 89, 315 N.E.2d 878 (1974) (ordinary fallible lawyer); *People v. Strodder,* 394 Mich. 193, 201, 229 N.W.2d 318, 321 (1975) (adequate competence and diligence); *State v. Leadinghorse,* 192 Neb. 485, 489, 222 N.W.2d 573, 577 (1974) (lawyer with ordinary training and skill in criminal law); *State v. Fleury,* 111 N. H. 294, 299, 282 A.2d 873, 877 (1971) (reasonable or ordinary performance); *State v. Bragg,* 221 N.W.2d 793, 802 (N. D. 1974) (within range of competence in criminal cases); *State v. Turley,* 113 R. I. 104, 318 A.2d 455 (1974) (reasonably effective assistance); *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975) (within range of competence in criminal cases); *Ex parte Gallegos,* 511 S.W.2d 510, 511 (Tex. Crim. App. 1974) (reasonably effective assistance); *In re Cronin,* 133 Vt. 234, 239-40, 336 A.2d 164 (1975) (reasonably likely to render and rendering effective assistance); *State v. Thomas,* ___ W. Va. ___ , 203 S.E.2d 445 (1974) (effective unless no reasonably qualified attorney would have so acted); *State v. Harper,* 57 Wis. 2d 543, 557, 205 N.W.2d 1 (1973) (ordinarily prudent lawyer, skilled in criminal law).

In our opinion the supposedly "new" standard now being urged has been applied in Kansas for many years, even though not articulated in the same language employed by some other courts. Analysis will reveal that it was in fact applied in petitioner's earlier case.

The most common wording of the Kansas test is found in *Winter v. State,* 210 Kan. 597, Syl. 4, 502 P.2d 733 (1972):

"The adequacy and effectiveness of an attorney's services on behalf of an accused in a criminal action must be gauged by the actual representation afforded the accused in its totality. To be a denial of an accused's constitutional rights it must clearly appear that the representation of the accused was wholly ineffective and inadequate. The burden is on the petitioner to show the representation by his attorney was so incompetent and inadequate that the total effect was that of a complete absence of counsel."

Petitioner focuses on the language "wholly ineffective and inadequate" and "complete absence of counsel," and it is true that such phraseology has found its way into a number of recent opinions. *E.g., Oswald v. State,* 221 Kan. 625, 561 P.2d 838 (1977); *State v. Nelson,* 223 Kan. 572, 575 P.2d 547 (1978); *Lee v. State,* 220 Kan. 221, 222, 552 P.2d 626 (1976); *Cook v. State,* 220 Kan. 223, 224, 552 P.2d 985 (1976); *State v. Carter,* 220 Kan. 16,

Syl. 5, 551 P.2d 821 (1976); *State v. Gross,* 221 Kan. 98, Syl. 4, 558 P.2d 665 (1976).

Nevertheless, when the facts of those cases are examined it will be seen that counsel's conduct in each case was found to be both effective and adequate by the standard now urged as new. In *Winter* itself, for example, trial counsel included some of the ablest members of the criminal defense bar, and the conduct complained of involved strategic and tactical decisions which were wholly unexceptionable. The court there specifically relied on the A.B.A. Standards in gauging the effectiveness of counsel and in allocating decision-making responsibility between client and counsel. Similar reliance may be found in *State v. Banks,* 216 Kan. 390, 395, 532 P.2d 1058 (1975), and in petitioner's own previous 1507 proceeding, *Schoonover v. State,* supra.

In petitioner's prior case the court did quote the entire test from *Winter,* but a reading of the case as a whole leads to the inescapable conclusion that the court was primarily concerned with the "totality of circumstances" aspect of the test:

"The totality of circumstances rule stated in *Winter* is quoted with approval in *State v. Banks,* 216 Kan. 390, 532 P.2d 1058. Considering the totality of circumstances as shown by the evidentiary record before us we cannot say that the trial court erred in holding that the petitioner failed to prove that she was denied her constitutional right to the effective assistance of counsel." (218 Kan. at 383.)

This statement followed an analysis of each of petitioner's claims of inadequacy, in the course of which each claim had been rejected. The basis for rejecting most of them was that the conduct complained of represented trial strategy adopted by counsel with the full knowledge and consent of the petitioner. As to the contention that her trial counsel's concededly unprofessional conduct in entering into a contingent fee arrangement with her was alone sufficient to show inadequacy, the court said "[i]n our judgment unprofessional conduct on the part of court-appointed counsel is simply one factor to be considered as a part of the totality of circumstances in making a judicial determination as to whether an indigent defendant has been provided representation by effective counsel." (218 Kan. at 384.) The A.B.A. Standards were considered not to be controlling, but a useful guide in assessing counsel's performance. The court went on to say that "the adequacy and effectiveness of counsel provided for an accused as guaranteed by the Constitution of the United States must

be measured by the *actual representation* afforded the accused," and that "unprofessional conduct may or may not be relevant as criteria for the judicial evaluation of the effectiveness of counsel, depending upon all the circumstances." (*Id.* at 385.) The unprofessional conduct referred to, of course, was solely the contingent fee contract. As noted, the other allegations of unprofessional conduct had earlier been considered and rejected. As to those it had already been found that counsel's performance had been at least reasonably competent.

There was nothing new in the standard applied in the first *Schoonover* case. At least as long ago as *Smith v. State,* 199 Kan. 293, 429 P.2d 103 (1967), the court was saying:

"Incompetency of counsel is a familiar plaint heard with increasing frequency in this post-*Gideon* era. However, the metes and bounds of legal adequacy have never been precisely defined. On the one hand it has been said that the constitution does not guarantee an accused the assistance of the most brilliant counsel. (*State v. Woods,* 179 Kan. 601, 296 P.2d 1114; *State v. Calhoun,* 194 Kan. 378, 399 P.2d 886.) On the other hand this court has pointed out that where an attorney chosen by a defendant is so incompetent or so dishonest or so improperly conducts his client's case as to amount, in practical effect, to no representation at all, the defendant has been deprived of a fair trial and should be granted relief. (*Miller v. Hudspeth,* 164 Kan. 688, 192 P.2d 147; *Converse v. Hand,* 185 Kan. 112, 340 P.2d 874; *McGee v. Crouse,* 190 Kan. 615, 376 P.2d 792.) We have stated also that the law requires honest, genuine and loyal representation on the part of legal counsel. (*State v. Calhoun,* supra; *Call v. State,* 195 Kan. 688, 408 P.2d 668, cert. den., 384 U.S. 957, 16 L.Ed.2d 552, 86 S.Ct. 1581.)

"*Between the boundaries thus drawn there is a considerable area of uncertainty* which we shall not attempt at this time to explore in depth. . . ." (p. 294. Emphasis added.)

The court thus recognized that "honest, genuine and loyal" representation—though not the most brilliant—would meet Sixth Amendment standards, while incompetence amounting to "no representation at all" would clearly not. It also recognized a gray area between the two bounds where the totality of the representation had to be considered.

The theme was picked up in *State v. Brown,* 204 Kan. 430, 464 P.2d 161 (1970):

"The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed. (*Johnson v. State,* 203 Kan. 947, 457 P.2d 181; *State v. Wright,* 203 Kan. 54, 453 P.2d 1.) On the other hand,

where an attorney is so incompetent or so dishonest or so improperly conducts his client's case as to amount, in practical effect, to no representation at all, the defendant is deprived of a fair trial and is entitled to relief. . . ." (p. 432.)

In *Brown* the court formulated the "totality" concept in these words:

"The effective assistance of counsel cannot be equated with the successful assistance of counsel. . . . The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells. . . ." (p. 435.)

In no case of which we are aware has a Kansas court found counsel to be "adequate" where the performance complained of fell short of the "reasonably competent" standard now urged as a new rule. In no case has our court put its imprimatur on counsel's conduct involving drunkenness in court or sleeping during a trial—two of the "horribles" petitioner suggests are acceptable under the Kansas test of adequacy. The court has found acceptable acts or omissions which, especially in the light of hindsight, appear to have been mistakes of judgment. Such approval only recognizes that lawyers are no more infallible than anyone else, and that decisions made in the course of a suit "must necessarily depend in large measure on the discretion and judgment, as well as the expertise, of the attorney trying a case." (*Tuscano v. State,* 206 Kan. 260, 262, 478 P.2d 213 [1970].)

The "reasonably competent" standard is no more than short-hand for the standard imposed by the Code of Professional Responsibility, especially Canons 6 and 7 and the Disciplinary Rules thereunder (Rule No. 501, 220 Kan. cix *et seq.*). It also, we suppose, establishes a standard for malpractice, since lawyers, like other professionals, are required to have and exercise the learning and skill ordinarily possessed by members of their profession in the community. *Cf. Juhnke v. Hess,* 211 Kan. 438, 506 P.2d 1142 (1973). Lawyers, like other professionals, do not guarantee success but only that their conduct will conform to prevailing standards of competence. We cannot believe our Supreme Court would ever find counsel "effective" in a constitutional sense where his malpractice (through incompetence or lack of zealousness) has been the cause of his client's conviction or otherwise worked to the client's substantial detriment. We have found no case which could be so construed.

We therefore agree with the trial court that *DeCoster* and

similar cases relied on by petitioner do not represent any change in the law since petitioner's first 1507 proceeding, not because Kansas has not yet adopted a "reasonably competent" standard for measuring counsel's performance but because that standard *has* been adopted and was applied in evaluating her counsel's performance in the first *Schoonover* case.

3. In her last point, petitioner alleges there were "unusual circumstances" which entitled her to relitigate the question of trial counsel's competence. Her contention is that her retained counsel in the first 1507 proceeding did not fully develop all the shortcomings of her trial counsel.

At the limited evidentiary hearing below the evidence was directed to this contention. Both of petitioner's retained attorneys in the prior proceeding testified. They confirmed what appeared of record as to that proceeding, *i.e.*, that the trial court had admonished them in open court, with petitioner present, that all grounds for collateral attack should be presented so as to avoid piecemeal litigation. They further testified that they presented every issue and argument they were aware of and had considered every suggestion made to them by petitioner. An examination of the Supreme Court opinion in that case reveals that five separate grounds of alleged inadequacy were considered and rejected, in addition to the question of the contingent fee contract.

The trial court's chief concern in this proceeding, and the reason it granted the evidentiary hearing it did, was an allegation by petitioner that one of her attorneys in the first proceeding was subjected to harassment and intimidation which prevented him from doing an adequate job. His testimony was that he was not intimidated and his performance was not affected, and the trial court so found.

There was also an allegation that counsel in the first 1507 proceeding failed to interview a number of witnesses who, she says, should have been called at her murder trial. Those witnesses are listed, along with the substance of their claimed knowledge of the case, in an exhibit (No. 4) introduced in this case. The trial court found that none of the "missing" testimony afforded any grounds for a collateral attack or a new trial. Our examination of it reveals that it had marginal relevance at best, and as a matter of trial strategy could well have been withheld by the most able of trial counsel.

In short, we agree with the trial court that petitioner had a full and fair opportunity in the first 1507 proceeding to present all her contentions concerning trial counsel's performance, and she did so. There were no unusual circumstances requiring a new evidentiary hearing on that issue.

The trial court properly dismissed this second 1507 petition as an abuse of the remedy and its judgment is affirmed.