No. 56,762

James L. Chamberlain, *Appellant*, v. State of Kansas, *Appellee.*

(694 P.2d 468)

 Opinion filed
January 26, 1985. 

*Ronald E. Wurtz*, of Topeka, argued the cause and was on the brief for appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: James L. Chamberlain appeals from an order of the district court, in a proceeding pursuant to K.S.A. 60-1507, denying a new trial sought on the basis of ineffective assistance of counsel. Chamberlain was originally convicted of one count of murder (K.S.A. 21-3401) and one count of aggravated robbery (K.S.A. 21-3427).

We refer to the memorandum decision of the trial court for a statement of the background of this case.

"On April 1, 1980, in Case # 79CR1802, the movant was convicted by a jury in the Shawnee County District Court, Division Three, of one count of first degree murder, pursuant to K.S.A. 21-3401, and one count of aggravated robbery, pursuant to K.S.A. 21-3427. On May 1, 1980, movant was sentenced to life for the count of first degree murder and to a term of not less than fifteen years nor more than life for the count of aggravated robbery, said sentences to run consecutive, one after the other. The Court, having found the offense was committed with a gun, sentenced movant under the provisions of K.S.A. 21-4618. Movant is presently incarcerated at the Kansas State Penitentiary at Lansing, serving said sentence.

"On June 2, 1980, appointed trial counsel, Robert Nelson, filed a notice of appeal in the District Court of Shawnee County, Kansas. On that same date, an order for transcript was filed, the Court having found movant indigent.

"Trial counsel did not follow through with the direct appeal to the Supreme Court and, on February 3, 1983, movant by and through his attorney, Camille Nohe, filed a motion to docket the appeal out of time with the Supreme Court of the State of Kansas. On March 15, 1983, appellant's motion to docket appeal out of time was granted. Argument was had before the Supreme Court limited to the issue of competency of counsel and, on December 2, 1983, movant's appeal was dismissed [*State v. Chamberlain*, 234 Kan. 422, 672 P.2d 604 (1983)] and he was directed to raise the issue of ineffective assistance of counsel before the trial court under the provisions of K.S.A. 60-1507.

"This case was then filed pursuant to the direction of the Supreme Court and on February 3, 1984, a hearing was had in the Third Division of the District Court, evidentiary in nature, wherein the movant herein appeared in person and by Camille Nohe, his attorney, and the State of Kansas appeared by Gene M.

Olander, District Attorney. The movant herein did not testify in connection with said hearing, the sole evidence being from Mr. Robert Nelson who was the court appointed attorney for James Chamberlain in the proceedings heretofore mentioned.

"The basic allegations of movant herein are that his counsel was so ineffective and incompetent that movant's Sixth Amendment rights were violated. Movant specifically alleges that his counsel at trial was incompetent and ineffective by (1) failing to challenge the legality of defendant's warrantless arrest in his own home, absent exigent circumstances, (2) failing to file motion to suppress incriminating evidence seized 'incident' to that arrest, to-wit the gun, (3) failing to request a Jackson v. Denno hearing prior to trial, (4) failing to move to suppress defendant's confession, and (5) failing to object to the introduction into evidence of various prejudicial exhibits, and defendant['s] counsel's repeated elicitation of evidence which was prejudicial and incriminating."

On the evening of November 6, 1979, Larry Bauman was working at his part-time job as a clerk in a liquor store in Topeka. Shortly before closing time he was robbed and shot in the head with a .357 magnum revolver. He died a short time later at Stormont-Vail Hospital from the gunshot which lacerated his brain. The ensuing police investigation led officers to suspect Chamberlain and on the night of November 12, 1979, several officers of the Topeka Police Department went to his home and arrested him. The officers did not have a warrant for his arrest and there were no exigent circumstances which would justify a warrantless arrest. At the time of the arrest a .357 magnum revolver was recovered which later was determined to be the murder weapon. Additional facts will be presented in connection with the various allegations of ineffective assistance of counsel.

We have often adopted the standards governing claims of ineffective assistance of counsel, stated in *Schoonover v. State*, 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978):

"The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed."

"Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which

causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel."

"In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells."

See *State v. Kendig,* 233 Kan. 890, 895-96, 666 P.2d 684 (1983); *State v. Miesbauer,* 232 Kan. 291, 654 P.2d 934 (1982); *State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981); *State v. Voiles,* 226 Kan. 469, 470-71, 601 P.2d 1121 (1979). Although the *Schoonover* standards have become well-established in Kansas it was only recently that the United States Supreme Court had an opportunity to directly address a claim of "actual ineffectiveness" of counsel as applied to the trial of a case. *Strickland v. Washington,* 466 U.S. ____, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). Our standards must now be viewed in the light of the decision in *Washington* rendered subsequent to the trial court's decision.

Washington pled guilty to three capital murder charges in Florida. In preparing for the sentencing hearing, appointed defense counsel spoke with Washington about his background but did not seek out character witnesses or request a psychiatric examination. Judging that it was advisable to rely solely on the plea colloquy for evidence as to defendant's character and emotional state, counsel presented no further evidence on these matters at the sentencing hearing, thereby preventing the prosecution from cross-examining defendant and from presenting psychiatric evidence of its own. The attorney did not request a presentence report because it would have included defendant's criminal history, undermining the claim of no significant prior criminal record. After the sentencing hearing the trial judge sentenced defendant to death on each of the three counts, finding numerous aggravating circumstances and no mitigating circumstances. *Washington,* 80 L.Ed.2d at 683-85.

At the outset, Justice O'Connor, writing for the majority, stated that the Sixth Amendment requirement of effective assistance of counsel in a capital sentencing proceeding was the same as in the actual trial of the case. The court stated:

"The Court has not elaborated on the meaning of the constitutional require-

ment of effective assistance in . . . cases . . . presenting claims of 'actual ineffectiveness.' In giving meaning to the requirement, however, we must take its purpose — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Washington*, 80 L.Ed.2d at 692-93.

## The Court announced the following standard:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Washington*, 80 L.Ed.2d at 693.

Under the first part of this two-pronged approach, a convicted defendant must show counsel's representation fell below an objective standard of reasonableness. The critical inquiry is "whether counsel's assistance was reasonable considering all the circumstances." 80 L.Ed.2d at 694. However, in presenting evidence on this issue, a defendant must overcome a presumption counsel's assistance was reasonable.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation omitted.]

. . . .

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The

court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Washington*, 80 L.Ed.2d at 694-95.

Turning to the second requirement, that defendant establish a reasonable probability the decision challenged would have been different had he received effective assistance, Justice O'Connor defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Washington*, 80 L.Ed.2d at 698.

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . .

"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Washington*, 80 L.Ed.2d at 698-99.

Concluding this analysis, the majority noted the principles outlined were not intended to establish mechanical rules. The ultimate focus in these cases is the fundamental fairness of the challenged proceeding; in each case "the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process . . . ." *Washington*, 80 L.Ed.2d at 699. The court made it clear the burden was upon the defendant to establish both requirements of the test and that failure to establish one would preclude any finding of ineffective assistance of counsel.

Applying these principles to the facts of *Washington*, the

Court concluded counsel's strategic choice to rely on evidence already before the trial judge was "well within the range of professionally reasonable judgments," and there was no reasonable probability the trial judge would have imposed a lighter sentence had counsel used the forgone evidence. Because the defendant failed to meet both elements of the test, the writ of habeas corpus was denied. 80 L.Ed.2d at 701-02.

Comparing *Strickland v. Washington* with the *Schoonover v. State* standards of ineffective assistance of counsel reveals little conflict between the two. Where *Schoonover* required proof of counsel's conduct substantially deviating from that expected of a reasonably competent lawyer in the community, *Washington* requires proof the conduct was not reasonable considering all the circumstances, with defendant required to overcome a strong presumption of reasonableness. *Schoonover* also required proof counsel's conduct caused the client's conviction or otherwise worked to the client's "substantial disadvantage." *Washington* now requires a defendant establish a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. While the actual application of the standards from *Schoonover* as opposed to those of *Washington* would in all probability effect the same result in any given case, we deem it appropriate to now adopt the *Washington* holdings as the prevailing yardstick to be used in measuring the effectiveness of counsel under the Sixth Amendment. They may be stated as:

*First.* The Sixth Amendment right to counsel is the right to the effective assistance of counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Second:* A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be

highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.

In adopting the *Washington* two-pronged standard or test we do not abandon the standards which have been carefully developed in *Schoonover* and its progeny. While the Supreme Court in *Washington* refrained from adopting any "mechanical rules" to be utilized in considering a claim of ineffective assistance of counsel we are of the opinion that our standards enunciated in *Schoonover* and built upon in subsequent cases remain viable guidelines in the application of the *Washington* standard.

With the foregoing standards and discussion from Washington before us, we now turn to the particular claims by Chamberlain that he did not receive effective assistance of counsel in his original trial. The decision of the trial court leading to this appeal was based upon the transcript and pleadings from the original trial, the testimony of defense counsel at the K.S.A. 60-1507 hearing and the briefs and arguments of counsel. We now have that same record before us.

Appellant first attacks the failure of Robert Nelson, his defense counsel, to seek suppression of incriminating statements made to police shortly after his arrest. It is appellant's contention that the arrest was illegal because the police forced their way into the home without a warrant and absent any exigent circumstances which would justify such an arrest. It is asserted the statement was therefore "fruit of the poisonous tree" and subject to suppression under the doctrine first enunciated in *Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed.2d 441, 83 S.Ct. 407 (1963). A *Jackson v. Denno* hearing was conducted by the court during trial when it became obvious the State would ask that the statement be admitted in evidence. The court found that Chamberlain had been read his *Miranda* rights prior to the time the

statement was taken and that the statement was freely, voluntarily and knowingly given. Nelson testified he had not sought suppression of the statement in a *Jackson v. Denno* hearing because his investigation disclosed the police officers were admitted to the home voluntarily by Chamberlain's mother, one of the owners of the property. Nelson had also determined from his client that the statement was voluntarily given with full knowledge of his rights. The evidence as to the admission of the police officers to the Chamberlain home is conflicting. One of the officers testified that after the police surrounded the house where plaintiff lived, they knocked on the front door and Chamberlain's mother voluntarily admitted them into the house. However, another detective testified that once Mrs. Chamberlain answered the door, "I ordered her to step out of the way, and we walked into the house." Mrs. Chamberlain's testimony is inconclusive although it is clear that she at no time actually denied the officers access to the property. When defense counsel has no sound basis to believe that a pretrial motion would have merit and has no reasonable evidence or argument upon which to base such a motion the failure to make it certainly cannot be equated with ineffective assistance of counsel.

Appellant also contends counsel should have kept the gun from being admitted in evidence on the same theory that his arrest was illegal and the gun was also "fruit of the poisonous tree." When Chamberlain was arrested in or near his bedroom the officers asked if he had a weapon and he disclosed the location of the gun to them. It was then seized by the officers and what has been said in connection with a possible suppression of the statement applies equally to the gun. In addition, the trial judge at the close of the *Jackson v. Denno* hearing ruled that the seizure of the weapon did not violate Chamberlain's constitutional rights.

Appellant's other contentions are directed toward the investigation, preparation and trial conducted on his behalf by Nelson. It would serve no useful purpose to prolong this opinion with a detailed discussion of each complaint voiced by appellant. Suffice it to say that, with the benefit of hindsight and nothing before us but a cold record, it is clear that some of Nelson's preparations and trial strategy left a great deal to be desired. However, when applying hindsight to any trial record it is

doubtful that many lawyers could boast of having conducted the trial exactly as they might have wished. As pointed out in *Schoonover* and *Washington*, the determination of the effectiveness of counsel cannot be based upon hindsight but must be viewed from counsel's perspective at the time of trial. The learned trial judge who presided at the original criminal trial and at the K.S.A. 60-1507 proceeding stated in his memorandum decision:

"In subjecting Mr. Nelson's representation of the movant herein [to the standards above] and looking at the totality of the circumstances, the Court is of the opinion that Mr. Nelson's representation did not fall below the standards of the *Schoonover* and *Schrum* cases.

"The Court will also note that Mr. Nelson testified at the hearing of this matter and his testimony was unrefuted that he spent in excess of 50 hours interviewing witnesses and conferring with the client; 26 hours [on] the preliminary hearing, research and preparation; 2.6 hours on pretrial motions which primarily surrounded the compentency to stand trial issue; 28 additional hours in trial preparation and 6 1/2 days in the trial of this case. It also should be noted that Mr. Nelson has practiced law in this community for almost twenty years prior to his recent suspension, which incidentally, has nothing whatsoever to do with this proceeding. Mr. Nelson, over the years, has tried many criminal cases before all the Judges of the Third Judicial District and has been appointed many times by the Courts of this District to represent indigent defendants in criminal cases. Mr. Nelson's unrefuted testimony in this matter is that he conferred with his client in great detail about the matters raised by counsel for movant and that his decisions as to what to do and what not to do were based upon his own judgment and that of his client after conferring.

"This Court must also note that the evidence in this case against Mr. Chamberlain is overwhelming, bolstered by his own statement which the Court in a Jackson v. Denno hearing found to be voluntarily made after the defendant had been advised of his constitutional rights under the Miranda decision. In this case we have a brutal murder committed by defendant of a young man who was shot to death lying on the floor of a liquor store having done everything requested of him by his assailant, only to be shot as a parting gesture for the sole reason of not leaving any witness to the crime.

*The Court believes strongly that this defendant received a fair trial, that Mr. Nelson's representation was not below standard[s] set forth in the above mentioned cases.*" (Emphasis added.)

We concur in the trial court's assessment of the representation afforded to the appellant. It is a rule of this court that in an action asserting ineffective assistance of counsel, the trial court must have an opportunity to assess the performance of counsel before an appellate court will consider the matter. Much deference and

reliance must be placed upon the wisdom and determination of the trial judge who saw all of the proceedings first hand as they happened. We have carefully reviewed the record from both the trial and the K.S.A. 60-1507 proceeding and we cannot say that appellant has met his burden under the standards of *Washington* and the guidelines of *Schoonover*. Ignoring the evidence which appellant contends *might* have been inadmissible and the trial strategy utilized, we cannot find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The judgment is affirmed.