NOT DESIGNATED FOR PUBLICATION

No. 122,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW JOSEPH HOUSWORTH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY and GERALD A. KUCKELMAN, judges. Opinion filed December 2, 2022. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and SCHROEDER, JJ.

PER CURIAM: Andrew Joseph Housworth timely appeals from his jury trial conviction for aggravated battery, asserting multiple errors: (1) His trial counsel was ineffective; (2) he was not competent to stand trial; (3) his right to counsel under the Sixth Amendment to the United States Constitution was denied based on his placement in an isolation cell around the time of trial; and (4) cumulative error. After a careful review of the record, we find no error by the district court. We affirm Housworth's conviction.

FACTS

Housworth and Charles Bednarek were involved in a scuffle after the two briefly argued inside the store at a gas station. Bednarek questioned Housworth about cutting line, and Housworth then threatened Bednarek before leaving the store. Housworth returned, continued to rant, and left again. Bednarek then left the store to fill a propane tank outside where Housworth confronted him once more. The two exchanged heated words before Housworth charged at Bednarek. Ultimately, Bednarek was stabbed in the chest during the scuffle.

Bednarek did not initially notice he had been stabbed but realized it when someone brought a towel to stop the bleeding. He described the wound as roughly one inch wide by four inches deep. As a result of his injury, Bednarek was kept overnight in a trauma center for observation and missed six weeks of work.

The heated discussion and attack were captured on video from multiple surveillance cameras and shown to the jury at trial. Housworth admitted to arguing with Bednarek and attempting to fight him behind the gas station. But Housworth claimed Bednarek was the aggressor. Housworth denied having a knife but admitted he had his keys in his hands at the time of the fight. A jury convicted Housworth of aggravated battery for inflicting great bodily harm on Bednarek.

Housworth filed several posttrial motions. Housworth's trial counsel, John Bryant, filed two motions for new trial on Housworth's behalf, generally asserting:

- Housworth was not afforded the presumption of innocence based on his appearance in jail clothing and the presence of an officer in the courtroom;
- Housworth did not have sufficient time or place to meet with counsel to prepare for trial;

- Housworth was not able to fully participate in his defense because he did not have access to his notes in the week before trial;
- Housworth was not competent to stand trial;
- jury deliberations should have been suspended until the jury could review the security video; and
- Housworth should have new counsel appointed as he intended to raise issues of Bryant's ineffectiveness.

Housworth filed two pro se motions for new trial and judgment notwithstanding the verdict, largely alleging ineffective assistance of counsel, asserting:

- Bryant did not present the defense they had discussed;
- Bryant failed to call a medical expert to rebut Bednarek's testimony about his wound;
- Bryant failed to call other witnesses Housworth requested;
- Bryant failed to present evidence Housworth had been found not guilty by means of mental disease or defect in a prior case;
- Bryant's busy caseload created a conflict of interest because he could not adequately prepare for Housworth's case;
- Housworth was denied access to his attorney for 10 days while in isolation;
- the jury did not have access to the video evidence during deliberations;
- the video evidence proved Housworth was acting in self-defense;
- Bednarek's testimony about his wound was improper expert testimony;
- Housworth was not competent to stand trial;
- it was a conflict of interest that Leavenworth County did not have a public defender's office; and
- the jury was not instructed on simple battery as a lesser included offense.

The district court appointed Clinton Lee to represent Housworth on his posttrial motions. Lee filed a supplemental brief in support of Housworth's various motions for new trial, generally alleging Bryant was ineffective and the jail interfered with Housworth's right to counsel.

The district court held multiple hearings on Housworth's posttrial motions. At the first hearing, Karen Morris, a mental health nurse from the Leavenworth County Jail, testified Housworth had been placed on suicide watch approximately a week before trial and was held in an isolation cell due to a self-imposed hunger strike. Bryant also testified Housworth was kept in isolation prior to trial.

At the second hearing, Housworth called Dr. Robert Barnett, a clinical psychologist, to testify about his competency. Dr. Barnett conducted an evaluation of Housworth months after trial and relied on Housworth's self-reported description of his mental state around the time of trial as well as the notes of the jail's mental health therapist. Dr. Barnett diagnosed Housworth with moderate PTSD, anxiety disorder, and depressive disorder. Based on the information he reviewed, the fact Housworth went on a hunger strike for six to seven days without food or water, and the conditions in the isolation cell, Dr. Barnett concluded Housworth was not competent.

The district court denied Housworth's motions, finding he had not shown Bryant was ineffective, the conditions in the jail did not violate his right to counsel, and Housworth had not proven he was incompetent to stand trial. The district court sentenced Housworth to 162 months' imprisonment with 36 months' postrelease supervision. We granted Housworth's motion to remand for findings of fact and conclusions of law on 10 of the claims raised in his posttrial motions. The district court held multiple hearings on remand. The district court requested the parties submit proposed findings of fact and conclusions of law. Upon review of the record and the parties' submissions, the district

court adopted the State's proposed findings of fact and conclusions of law and denied Housworth's requests for relief. Additional facts are set forth as necessary.

ANALYSIS

*Housworth's Ineffective Assistance of Counsel Claims Are Unpersuasive*

Housworth raises three claims of ineffective assistance of trial counsel. Specifically, he asserts his trial counsel was ineffective for: (1) failing to object when an officer escorted Housworth to the witness stand at trial; (2) failing to use an expert witness or call the treating medical providers to show the extent of Bednarek's injury did not constitute great bodily harm; and (3) failing to move for the district court to suspend jury deliberations after the jury informed the district court it could not play the DVD from the surveillance cameras on the equipment in the jury room. Because his first three claims fall under the umbrella of ineffective assistance of counsel, we will address them as a single issue using the same standard of review and applicable legal principles.

*Standard of review and applicable legal principles*

When the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, we review the district court's factual findings using a substantial competent evidence standard. We review the district court's legal conclusions based on those facts applying a de novo standard of review. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

The right to effective counsel is embodied in the Sixth Amendment and "plays a crucial role in the adversarial system." *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); see *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). Claims of

5

ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland*. Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, we move to the second prong and determine "'whether there is a reasonable probability that, without counsel's unprofessional errors, the result would have been different.'" *Khalil-Alsalaami*, 313 Kan. at 485.

"To establish deficient performance under the first prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" 313 Kan. at 485. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires we make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances surrounding the challenged conduct, and to evaluate the conduct from counsel's perspective at the time. When considering a claim of ineffective assistance of counsel, we must strongly presume defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under all of the circumstances, counsel's action "'might be considered sound trial strategy.'" 313 Kan. at 485-86.

While some aspects of a criminal case remain with the accused—such as what plea to enter, whether to waive a jury trial, or whether to testify—other aspects of a criminal case—such as what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions—are left to the defense counsel. *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). But simply invoking the word "'strategy'" does not protect "'the performance of a criminal defendant's lawyer from constitutional criticism.'" *Sola-Morales v. State*, 300 Kan. 875, 887, 335 P.3d 1162 (2014). Housworth bears the burden to prove his trial counsel's alleged deficiencies did not result from strategy. See 300 Kan. at 888.

6

Under the second prong, the defendant must show his defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show

> "with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. '"A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."' [Citation omitted.]" *Khalil-Alsalaami*, 313 Kan. at 486.

*Discussion*

Housworth first argues Bryant was ineffective by failing to object when an officer escorted Housworth to the witness stand at trial. Contrary to Housworth's argument, the record does not clearly reflect an officer stood near Housworth during his trial testimony. Bryant testified that a uniformed officer escorted Housworth to the witness stand and stood between Housworth and the jury. However, this is not reflected in the trial transcript. Bryant further testified an unknown juror approached him after the trial and mentioned the fact a deputy escorted Housworth to the witness stand. However, there was no indication this fact influenced the jury's decision. Rather, from the limited discussion in Bryant's testimony, this seemed to be nothing more than an observation by the juror. The district court noted there was no record evidence of when or for how long the deputy may have stood near the witness stand, and it was a requirement of the court to have an officer in the courtroom when an in-custody defendant was at counsel table or on the witness stand. We observe no evidence the deputy put hands on Housworth or otherwise exerted physical control over him during his testimony.

The trial transcript does not support Housworth's claim, and the district court was within its province as fact-finder to credit or reject Bryant's recollection of the proceedings. Further, as the State points out, if Bryant had objected to the deputy escorting Housworth, it likely would have only further drawn the jury's attention to the

matter. It is also unclear from Housworth's briefing what objection he believes would have been appropriate, what the district court would or could have done in light of such objection, and how such ruling or remedy would have affected the outcome of trial. Instead, Housworth advances a generally conclusory argument claiming the presence of the deputy during his testimony—a fact not clearly supported by the record—violated the presumption of innocence and undermined his credibility. Housworth offers limited citation to authority in support of his point, which appears only marginally analogous to the alleged events here. We find this claim unpersuasive.

Housworth next contends Bryant was ineffective for failing to call an expert witness to testify about the extent of Bednarek's wound. The State correctly points out this argument fails as it is entirely speculative. Housworth presented no expert testimony or other evidence before the district court; thus, he has not demonstrated what an expert witness could or would have testified to at trial. Even assuming Bryant should have called an expert witness, Housworth cannot demonstrate prejudice because he failed to present evidence showing how it would have affected the outcome at trial. See *State v. Cheatham*, 296 Kan. 417, 438-39, 292 P.3d 318 (2013). Without this requisite showing, Housworth's second claim is unpersuasive. See *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

The State argues Housworth's briefing violates Supreme Court Rule 6.02(a)(4) (2022 Kan. S. Ct. R. at 36) as he makes multiple factual assertions about the extent of Bednarek's injuries without citation to the record. And Housworth further makes passing reference to Bednarek's medical records, which are not in the record on appeal. We agree Housworth's briefing of these points violates Rule 6.02(a)(4). The State also contends that any discrepancy about the depth of the wound would not have affected the jury's verdict because: "'Great bodily harm' is harm that is 'more than slight, trivial, minor, or moderate harm, and does not include mere bruising.' *State v. Green*, 280 Kan. 758, 765,

127 P.3d 241 (2006)." Here, Bednarek testified his wound was serious enough it required him to be transferred to a trauma center in Overland Park where he was kept overnight. Bednarek further testified he missed six weeks of work while the wound healed and he had to pack the wound with gauze the entire time. Based on his testimony, we find the jury could reasonably conclude Bednarek's injury constituted great bodily harm irrespective of any discrepancy about the depth of the wound.

Housworth's final claim alleges Bryant was ineffective because he failed to ask the district court to suspend jury deliberations while the parties attempted to provide the jury with a device it could use to watch a video from the surveillance cameras. His argument on this point is an exercise in hindsight. Viewed from the time of counsel's conduct, Bryant's performance was not objectively unreasonable. See *Khalil-Alsalaami*, 313 Kan. at 486. The jury informed the district court it could not watch the video with the equipment in the jury room. The parties were actively working to remedy the situation. However, the jury continued to deliberate for approximately 15 to 20 minutes while the parties arranged to have a laptop brought into the jury room. When the bailiff went in to give the laptop to the jury, the jurors indicated they already reached a verdict.

Given the nature of the jury's concern, the district court and the parties could not have reasonably expected the jury would reach its verdict before it was able to review the video. Suspending the jury deliberations only appears beneficial in hindsight. We cannot use the distorting effects of hindsight to judge the reasonableness of Bryant's performance. See *Strickland*, 466 U.S. at 689. Accordingly, Housworth fails to establish Bryant's performance was objectively unreasonable. But, even assuming Bryant should have requested the district court suspend jury deliberations, the State is correct it would not have affected the verdict. The jury viewed parts of the video at least nine times during various portions of Bednarek's, Housworth's, and the investigating officer's testimony. Watching the video one more time likely would have had little effect on the jury's decision. And at the risk of belaboring the obvious, the timing of the jury's verdict

9

necessarily reflects it felt further review of the video was unnecessary to its decision. Housworth's argument on this point fails because he did not show deficient performance or prejudice.

Housworth incidentally asserts the State committed misconduct requiring a mistrial by failing to provide the video in a format the jury could view during its deliberations. However, Housworth fails to properly argue the point and fails to support this incidental argument with citation to pertinent authority. Accordingly, we deem this portion of his argument waived and abandoned. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (point raised incidentally in brief but not argued therein deemed waived or abandoned; point deemed improperly briefed based on failure to cite pertinent authority in support thereof). Housworth's claims Bryant was ineffective are unpersuasive and/or not supported by the record.

*The District Court Did Not Abuse Its Discretion in Finding Housworth Was Competent to Stand Trial*

Housworth argues the district court erred in finding he was competent to stand trial. Specifically, Housworth asserts the fact he spent the week before trial in isolation—often without food or water due to his self-imposed hunger strike—made him unable to understand the nature of the proceedings and assist in his defense.

*Standard of review and applicable legal principles*

A district court's determination a defendant was competent to stand trial is reviewed for an abuse of discretion. *State v. Woods*, 301 Kan. 852, 860, 348 P.3d 583 (2015). "A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact." *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

Under Kansas law, a person is presumed competent to stand trial. A person charged with a crime is incompetent to stand trial when, by nature of mental illness or defect, the person is unable to understand the nature of the proceedings and/or to assist in making the person's defense. K.S.A. 22-3301(1). Housworth, as the person asserting incompetency, has the burden to prove his claim by a preponderance of the evidence. *State v. Hedges*, 269 Kan. 895, 912, 8 P.3d 1259 (2000).

*Discussion*

The State correctly points out Housworth's argument is asking us to reweigh the evidence underlying the district court's decision, which we cannot do. See *Drach v. Bruce*, 281 Kan. 1058, 1067, 136 P.3d 390 (2006). In his brief, Housworth extensively relies on Dr. Barnett's conclusion he was not competent to stand trial. But the district court found Housworth's claimed incompetency had not been proven sufficiently. In fact, the district court found the evidence Housworth was competent to stand trial was "overwhelming."

Dr. Barnett's evaluation of Housworth was conducted months after the trial and substantially relied on Housworth's self-reported description of his mental state around the time of trial as well as the notes of the jail's mental health therapist. Dr. Barnett diagnosed Housworth with moderate PTSD, anxiety disorder, and depressive disorder. Based on the information he reviewed, the fact Housworth went on a hunger strike for six to seven days, and the conditions in the isolation cell, Dr. Barnett concluded Housworth was not competent.

In contrast, Bryant visited with Housworth during the time he was in isolation and had no concerns about Housworth's competency. Prior to trial, Bryant met with Housworth and was able to converse with him and discuss their defense. Housworth was able to appropriately ask and answer questions, help prepare his defense, and did not

11

appear to be delusional. On the day of trial, Bryant further observed Housworth was coherent, able to ask and answer questions appropriately, and did not appear to be suffering from any delusions. Morris, the nurse who monitored Housworth during his week-long hunger strike, also noted Housworth appeared coherent when she met with him; he was able to ask and answer questions appropriately, and she did not observe any bizarre behavior.

The district court resolved the conflicting evidence regarding Housworth's competency. The record reflects during Housworth's trial testimony he was aware of the nature of the proceedings and assisted in asserting his claim of self-defense. Housworth offered coherent testimony describing the events, generally asserting Bednarek was the aggressor and Housworth acted in self-defense. The district court did not abuse its discretion in finding Housworth was competent to stand trial.

*Housworth's Placement in an Isolation Cell Prior to Trial Did Not Violate His Sixth Amendment Right to Counsel*

Housworth next argues he was denied sufficient contact with his attorney to prepare for trial based on his placement in isolation and the jail's policies regarding visitation hours. Specifically, he complains:  "He was forced to meet with his attorney in a common area inside the booking cell. This meeting obviously lacked the kind of privacy guaranteed by the Sixth and Fourteenth Amendments." The State responds Housworth fails to support his factual assertions with citations to the record; therefore, we should presume there is no factual support for his claim in the record. See Rule 6.02(a)(4). We find Housworth's argument unpersuasive due to improper briefing. See *Meggerson*, 312 Kan. at 246. Nevertheless, even if we consider Housworth's argument, we find it is unpersuasive on the merits.

The record reflects Bryant testified he met with Housworth three to four times at the jail in person and had additional in-person contact at pretrial hearings as the case proceeded. Bryant also stopped by the jail at various times to speak with Housworth but was unable to meet in a private room due to ongoing construction as the jail had only one attorney-client meeting room at the time. Because of the construction, Bryant would update Housworth on the status of the case via the jail's phone system while not discussing confidential issues. Bryant asked Housworth to do certain things in preparation for trial, and Housworth provided Bryant with names of people to interview. Bryant also received written correspondence from Housworth and saw no indication their attorney-client mail had been viewed or tampered with by jail staff.

In the week prior to trial, Bryant was able to meet with Housworth in the isolation cell to discuss the case. Bryant recalled the meeting lasting for several hours. He did not hear anyone else's conversations outside of the room and assumed no one could hear him speaking with Housworth. No one else was present, and Bryant did not see any microphones or recording devices in the room. Bryant felt the meeting was not as thorough as he would have liked because Housworth did not have any of his legal documents, did not have a pen and paper to take notes, and there was no table or writing surface in the room. Still, Bryant showed Housworth some of the security videos on his laptop, and Housworth indicated he had seen enough.

The record does not support Housworth's argument he had insufficient contact with his attorney prior to trial and/or their meetings and other communication were not private. We find Housworth's briefing of the issue fails to support his factual assertions with proper citation to the record and, in the alternative, we find his argument unpersuasive as the record evidence establishes he met with his attorney several times as they prepared for trial.

*There Was No Cumulative Error*

Finally, Housworth contends even if the individual errors he alleges do not warrant reversal, the cumulative effect of those errors requires he be granted a new trial. However, when an appellate court finds no errors exist, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Because Housworth fails to identify any errors, he cannot demonstrate cumulative error.

Affirmed.