NOT DESIGNATED FOR PUBLICATION

No. 124,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JASON A. JONES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed December 2, 2022. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: Jason Jones appeals the district court's denial of his K.S.A. 60-1507 motion, claiming the court erred when it denied his motion without first holding an evidentiary hearing. We affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Jones was convicted of first-degree premeditated murder, felony murder, and aggravated kidnapping in 2014. His convictions arose from a series of horrific events that occurred on January 11, 2013, which are discussed more fully in the Kansas Supreme

1

Court's opinion in Jones' direct appeal. See *State v. Jones*, 306 Kan. 948, 398 P.3d 856 (2017). Because the issue raised in Jones' K.S.A. 60-1507 motion requires an examination of the evidence at his trial, we summarize those facts here.

*The Evidence at Trial*

In January 2013, Jones worked at an auto shop owned by Dang Sean. Shawn Lindsey had been Sean's business partner at the shop until 2012, and Lindsey owed Sean money. Sean directed another man to pick up Lindsey and bring him to the shop to discuss the debt.

Jones and others were at the shop when the man arrived with Lindsey. Sean and Lindsey began discussing Lindsey's debt, but Sean soon began punching and kicking Lindsey. Jones, who was present during the beating, then drove with Lindsey and a few other men to look for Lindsey's truck, so it could be used as collateral for the debt. When they returned to the shop, Lindsey's torture continued, with Jones taking a more direct role.

After Lindsey's legs were zip-tied together, Jones poured methamphetamine into a spoon while Sean was holding a syringe and needle. Sean injected Lindsey with the methamphetamine. Jones then wrapped Lindsey in an electric fence; he gave a car battery starter to another man at the shop who connected it to the fence but did not start it. Sean began shooting Lindsey with an airsoft gun, and Lindsey began shaking violently. The fence was removed after Sean shot airsoft pellets at the battery starter to try to turn it on.

At this point, someone said Lindsey was almost dead, so Sean told Anthony Garza (the man who had originally retrieved Lindsey from his home) to cut the zip-ties on Lindsey's legs so he could be taken to the hospital. Jones and Sean put Lindsey in a black Silverado, where he "started to fade out and die." Sean then told Garza to leave, and

2

Jones texted Garza, instructing him not to say anything. Jones and another person later picked up Garza and brought him back to the shop, where Sean told Garza that he would kill him if Garza said anything.

Lindsey's body was discovered in a field, with a nearby security camera showing that it had been dumped out of a vehicle (which the State identified as the black Silverado). A toxicology report showed high levels of methamphetamine in Lindsey's blood. The coroner determined that the cause of death was methamphetamine toxicity, and that the manner of death was homicide.

Garza and other eyewitnesses testified in detail about these events at Jones' trial. At the close of the evidence, the trial court instructed the jury on first-degree premeditated murder, felony murder, and aggravated kidnapping, along with the lesser included offenses of intentional and reckless second-degree murder, involuntary manslaughter, kidnapping, and criminal restraint. The court also instructed the jury on the intent needed to convict Jones of these crimes under an aiding-and-abetting theory, stating in Instruction 18:

> "A person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids another to commit the crime.
> "The person is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the person could reasonably foresee the other crime as a probable consequence of the committing or attempting to commit the intended crime."

The jury found Jones guilty of first-degree premeditated murder, felony murder, and aggravated kidnapping. Jones was sentenced to life without parole for 25 years on the first-degree murder conviction (what Kansas courts call a hard-25 sentence) and 165

months in prison on the kidnapping conviction, to be served consecutively. The Kansas Supreme Court affirmed Jones' convictions. 306 Kan. at 962.

*K.S.A. 60-1507 Motion*

Following his direct appeal, Jones filed a pro se K.S.A. 60-1507 motion raising nine claims. Relevant to our discussion here, he argued that his trial counsel was ineffective for failing to object to the language in the second paragraph of Instruction 18 based on *State v. Overstreet*, 288 Kan. 1, 11, 200 P.3d 427 (2009), which clarified that the Kansas pattern jury instructions' foreseeability instruction for aiding and abetting—the same as Instruction 18—should not be used for crimes that require a specific intent. After reviewing Jones' motion, the district court appointed counsel to represent him.

The State agreed with Jones that the trial court should have clarified that the foreseeability language in Instruction 18 did not apply to the specific-intent crimes of aggravated kidnapping and first-degree murder, as *Overstreet* instructs. The State also agreed that Jones' counsel was deficient for failing to recognize and object to this instructional error. But the State argued that Jones had not shown that this deficiency affected the outcome of his trial, given the extent and nature of the evidence showing Jones' direct participation in Lindsey's kidnapping and murder.

The district court held a nonevidentiary hearing on Jones' motion. Jones' counsel argued that an evidentiary hearing was warranted to assess whether the erroneous instruction affected the outcome of Jones' trial. But the district court ultimately disagreed and denied Jones' K.S.A. 60-1507 motion without holding an evidentiary hearing. The court found that though Jones had showed his attorney's representation was deficient, he had not offered any explanation of how that deficiency prejudiced him, given the evidence presented at trial.

DISCUSSION

Jones asserts that the district court erred when it denied his K.S.A. 60-1507 motion without holding an evidentiary hearing. He points out that an evidentiary hearing would have given him an opportunity to show how the foreseeability instruction affected his trial. But he does not offer any explanation of what evidence he may have offered at that hearing—he merely asserts that such a hearing would have given him the chance "to present evidence, including testimony, going to the prejudicial nature of trial counsel's ineffectiveness." We do not find this conclusory assertion persuasive.

The district court found that an evidentiary hearing was not necessary to resolve Jones' K.S.A. 60-1507 motion. Appellate courts exercise unlimited review over a K.S.A. 60-1507 motion that was dismissed or denied without an evidentiary hearing. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). On appeal, we—like the district court—must determine whether "the motion and the files and records of the case conclusively show that [Jones] is entitled to no relief." K.S.A. 2021 Supp. 60-1507(b); see *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

To warrant an evidentiary hearing, a K.S.A. 60-1507 motion must allege something more than conclusory claims. *Trotter v. State*, 288 Kan. 112, 131-32, 200 P.3d 1236 (2009). An evidentiary hearing is not merely a vehicle for a movant to embark on a fishing expedition so that he or she "might catch a fact that could lead to something favorable." *Stewart v. State*, 310 Kan. 39, 54, 444 P.3d 955 (2019). Instead, "it is incumbent upon the movant to show that a triable issue of fact already exists and is identifiable at the time of the motion." 310 Kan. at 54-55. Such information may include further factual development and background, names of witnesses and the nature of their testimony, or other details showing the movant is entitled to relief. *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007).

With these principles in mind, we turn to Jones' claims alleging the ineffective assistance of his trial counsel. The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of an attorney. See U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A person asserting the denial of that right must show that his or her attorney's performance was constitutionally deficient and that this deficiency prejudiced the person so as to deprive him or her of a fair trial. 466 U.S. at 687; *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting the *Strickland* approach in Kansas). Put another way, this prejudice inquiry requires a person to show "'a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012).

Jones' K.S.A. 60-1507 motion raised nine claims of ineffective assistance of counsel. On appeal, he has abandoned all but one: that his attorney was ineffective for not objecting to the foreseeability instruction. We thus limit our review to that question. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are deemed abandoned); see also *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018) (issues only incidentally mentioned are not preserved for consideration on appeal).

As a starting point, we agree with both parties that Jones' trial counsel should have recognized and objected to the error in Instruction 18. *Overstreet* was decided about five years before Jones' trial and held that the exact foreseeability language used in this case— when given without additional clarification—was clearly erroneous in a case involving first-degree murder because it misled the jury about the specific intent required to prove that offense. See 288 Kan. at 11 (foreseeability language, combined with prosecutor's emphasis on that language during closing argument, was clearly erroneous in a case involving a charge of first-degree murder). Since Jones' trial, our Supreme Court has applied the *Overstreet* analysis in a case involving aggravated kidnapping, which is also a specific-intent crime. See *State v. Mattox*, 305 Kan. 1015, 1025, 390 P.3d 514 (2017).

We recognize that the trial court in this case instructed the jury on lesser included offenses that did not require a finding of specific intent. But this situation requires, at a minimum, clarification as to which charges the foreseeability instruction applied and which charges it did not. See *Overstreet*, 288 Kan. at 14. And though the absence of an objection did not prevent Jones from raising this issue on direct appeal, his attorney nevertheless should have been aware of this principle and objected to the instruction as given. See K.S.A. 2021 Supp. 22-3414(3); *Edgar*, 294 Kan. at 838. We therefore presume that Jones demonstrated that his trial counsel provided deficient representation under *Strickland*.

The parties disagree, however, as to whether an evidentiary hearing was required to determine if Jones was prejudiced by his counsel's deficient performance. Jones essentially argues that his attorney's defective representation was enough, standing alone, to warrant an evidentiary hearing to assess the effect of that error. The State asserts, as it did before the district court, that Jones still has the burden to show that an evidentiary hearing is needed to resolve his claim.

The State is correct. To make the threshold showing necessary to warrant an evidentiary hearing under K.S.A. 60-1507, a movant cannot simply make conclusory statements. Instead, the movant must provide an evidentiary basis for his or her assertions. See *Swenson*, 284 Kan. at 938. Jones' motion lacks details regarding what should be developed during an evidentiary hearing as to how the foreseeability language in Instruction 18 affected the outcome of Jones' trial. This deficiency is particularly glaring given the overwhelming evidence presented against him.

In *State v. Engelhardt*, 280 Kan. 113, 132, 119 P.3d 1148 (2005), our Supreme Court faced this same instructional error during a direct appeal of a first-degree murder conviction. Though the court found the instruction deficient, it ultimately held the error

7

was harmless because "overwhelming evidence . . . demonstrated that Engelhardt was guilty of either intentionally murdering the victim or aiding and abetting the intentional murder." 280 Kan. at 133-34. In reaching this conclusion, the *Engelhardt* court noted the victim was stabbed 55 times and the evidence showed that Engelhardt was involved. Thus, the court reasoned, correcting the instructional error would not have affected Engelhardt's conviction. 280 Kan. at 134.

We reach the same conclusion here. In Jones' criminal case, the State presented evidence that Jones was directly involved in Lindsey's aggravated kidnapping and murder; the State also argued that he could be convicted as an aider and abettor of those crimes. As in *Engelhardt*, the evidence—consisting largely of eyewitness testimony—showing Jones' direct participation in the kidnapping and murder, and his specific intent required to commit those crimes, was overwhelming:

- For the kidnapping charge, witnesses testified that Jones held Lindsey in the shop, drove Lindsey around in an attempt to locate Lindsey's truck as collateral for the debt he owed, and told others at the shop to make sure that Lindsey did not leave. And the witnesses testified that Jones did these things with the specific intent to terrorize Lindsey and to inflict serious bodily harm, eventually resulting in his death.

- For the first-degree murder charges, witnesses testified that Jones knowingly and directly participated in Lindsey's premeditated killing. Jones wrapped an electrical fence around Lindsey which was hooked to a car battery starter. Jones poured methamphetamine into a syringe, knowing it was going to be injected into the Lindsey's arm—the ultimate cause of Lindsey's death. Jones then loaded Lindsey into a truck, seeing Lindsey had "started to fade out and die." Lindsey's body was eventually dumped from that truck in a field.

As this discussion demonstrates, the evidence at trial was overwhelming as to Jones' direct participation in and specific intent to commit both crimes. This rendered the foreseeability instruction, when combined with the rest of the aiding-and-abetting instruction, superfluous. And unlike in *Overstreet*, the prosecutor in Jones' criminal case did not emphasize the potentially confusing foreseeability instruction during closing argument. Instead, the prosecutor focused on the overwhelming evidence demonstrating Jones' direct involvement in Lindsey's kidnapping and murder. Jones has not pointed to any facts that would be developed at an evidentiary hearing to undermine this conclusion.

After reviewing Jones' K.S.A. 60-1507 motion, along with the files and records in this case, we agree with the district court that Jones has not shown an evidentiary hearing was warranted to assess the prejudice of his trial counsel's failure to object to the foreseeability instruction. The evidence before the jury was overwhelming and overshadows any potential harm that could have resulted from his attorney's error.

The district court did not err when it denied Jones' K.S.A. 60-1507 motion without an evidentiary hearing.

Affirmed.