NOT DESIGNATED FOR PUBLICATION

No. 125,340

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY D. SWINDLER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sumner District Court; GATEN WOOD, judge. Submitted without oral argument. Opinion filed November 9, 2023. Affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Jeffrey D. Swindler appeals the denial of his K.S.A. 60-1507 motion. Swindler was convicted of rape of an 11-year-old girl. He contends that his trial counsel was ineffective for failing to impeach the victim and the jailhouse informant who testified against him. We affirm.

FACTS

In 2009, the State charged Swindler with one count of rape of L.C., who was 11 years old when the rape occurred. Swindler was engaged to L.C.'s cousin, M.M. The rape

1

occurred when L.C. was spending the night at M.M.'s house, along with Swindler and Swindler's two young daughters.

L.C. testified at Swindler's preliminary hearing. She stated that she, M.M., Swindler, and Swindler's two children, were watching a movie in a bedroom and they all fell asleep. The two children fell asleep on the floor. L.C. fell asleep on the bed, between Swindler and M.M. L.C. was awakened when Swindler put his finger in her vagina. L.C. pushed him off her and went into the bathroom. They did not speak. L.C. did not tell M.M. what happened. L.C. stayed at the house until the next morning.

M.M. testified on Swindler's behalf. She testified that L.C. had never laid in bed with her and Swindler. She further testified that L.C. slept on the floor in the girls' bedroom.

The case went to trial in March 2010. Michael Brown represented Swindler. Brown moved to suppress Swindler's statements to law enforcement officers, which was denied. At trial, a law enforcement officer testified that Swindler had confessed to the rape. A written confession and video of the interrogation were admitted into evidence.

L.C. testified that Swindler put his finger in her vagina while she was sleeping. She told him, "'Get off me,'" and she then went into the bathroom. She then woke up M.M. and told her she wanted to go home. But L.C. did not leave that night because there was no one at her home. She instead left the next morning. The State introduced no physical evidence.

M.M. again testified that L.C. was not in the bed with her and Swindler; L.C. had slept in the other bedroom. M.M. was married to Swindler by that time.

Swindler testified on his own behalf. The jury found him guilty of rape.

Swindler appealed. Our Supreme Court reversed his conviction because his motion to suppress his confession should have been granted. The case was remanded for a new trial. *State v. Swindler*, 296 Kan. 670, 671, 294 P.3d 308 (2013).

Swindler filed a pro se motion to terminate Brown as his counsel. The district court did not think there was any basis for the motion and speculated Swindler was not going to be happy with any attorney. But the court agreed "out of an abundance of caution, and, quite frankly, just to relieve Mr. Brown of having to deal with your animosity right now" and appointed Elaine Esparza to represent Swindler.

In March 2014, about a month before the second trial, the State moved to endorse Brandon O'Neal, a jailhouse informant, as an additional witness. O'Neal had offered to furnish information on Swindler and several other inmates in exchange for a reduced prison sentence. Esparza did not object. Swindler did object, stating he had never talked to O'Neal about his case. The district court granted the motion to endorse, noting there was no basis to deny such motion and its ruling was not an opinion on the truthfulness of O'Neal's testimony.

Esparza filed a motion in limine asking for exclusion of any references to the first trial, to Swindler's alleged confession, and to the Supreme Court decision, including parts of O'Neal's testimony. The court granted the motion.

Days before trial, the State disclosed that O'Neal had access to a packet of papers Swindler had with him in jail. O'Neal had seen the Supreme Court opinion from Swindler's first trial.

The day before trial, Swindler retained Roger Falk to represent him. Falk moved to continue the trial. Falk stated Swindler had lost confidence in Esparza and outlined various complaints Swindler had with Esparza. Esparza joined in Swindler's motion for a

3

continuance and moved to withdraw. She argued that Swindler's complaints put her in "an untenable ethical position." The district court denied the motion to continue. Falk then withdrew as Swindler's counsel.

At the second trial, L.C. again testified she fell asleep between M.M. and Swindler while watching a movie. She awoke to find Swindler's finger inside her vagina. She got up and went into the bathroom. She did not say anything to Swindler. She then asked M.M. if she could go home. M.M. woke up Swindler to take her home. Swindler started to drive L.C. home, but L.C. remembered no one else was there and they returned to M.M.'s house. She slept on the other side of M.M. She did not tell M.M. what happened. On cross-examination. L.C. admitted she had stayed the night with M.M. and Swindler since the incident and she had seen them other times.

M.M. again testified that L.C. was not in the bed with her and Swindler. But she did remember that L.C. woke her up and asked to go home.

O'Neal testified that Swindler confessed he had fingered his "niece" one night when he, his wife, and niece were all lying in bed. On cross-examination, O'Neal admitted that he had received a favorable plea agreement from the State in exchange for his testimony. He received a substantially reduced sentence. O'Neal was facing charges for burglary, theft, and aggravated arson.

After the State rested, the district court asked Swindler whether he wanted to testify. Swindler stated he did not wish to testify then, but "maybe later." The court said, "[Y]ou can always change your mind." Esparza called three character witnesses to testify. Afterwards, Esparza and Swindler had an off-the-record discussion. Then the defense rested.

In closing, Esparza pointed out that the State had no physical evidence, that L.C. waited several weeks before telling anyone what allegedly happened, that L.C. stayed with M.M. and Swindler again after the incident, that Swindler took her home afterwards, and that M.M.'s testimony contradicted L.C.'s account. She also emphasized that O'Neal had received a significant benefit from his testimony.

The jury convicted Swindler of rape. The district court sentenced Swindler to the mandatory hard 25 life imprisonment sentence.

Swindler appealed. A panel of this court affirmed his conviction. *State v. Swindler*, No. 118,484, 2019 WL 1746952, at *1 (Kan. App. 2019) (unpublished opinion). Our Supreme Court denied his petition for review in December 2019, and the mandate was issued in January 2020.

On October 2, 2020, Swindler filed a pro se K.S.A. 60-1507 motion that is the subject of this appeal. He filed an addendum to the motion on October 5, 2020. He claimed ineffective assistance due to:

- Trial counsel's failure to investigate and present an expert in forensic psychology to challenge the victim's account and the prosecution's expert;
- trial counsel's failure to investigate and present certain text messages;
- trial counsel's failure to request a continuance to investigate witnesses, text messages, and to obtain an expert; and
- district court's denial of the motion for continuance by newly retained counsel.

He also alleged that the district court abused its discretion in allowing the testimony of O'Neal.

The district court appointed counsel for Swindler and held an evidentiary hearing. At the evidentiary hearing, Swindler's arguments focused on Esparza's failure to do the following: ask for a psychiatric evaluation of L.C., point out inconsistencies in L.C.'s testimony to undermine her credibility, request a continuance to investigate O'Neal's story, paint O'Neal as a jailhouse snitch who would testify against anyone whether or not it was true, investigate some alleged text messages that Swindler believed would show he was framed, move to withdraw based on conflict, and discuss with Swindler whether he wanted to testify.

Esparza testified that her trial strategy was to point out inconsistencies in L.C.'s testimony. But she admitted that she had not done so. She based her cross-examination on the testimony that was given that day. And she did not want to "beat up on a child witness." Had she used L.C.'s previous testimony from the first trial, it could have opened the door for the State to bring in evidence of the first trial.

Esparza did not recall why she did not object to the late endorsement of O'Neal as a witness. Esparza did not recall what investigation she had performed on O'Neal, but believed she would have checked to make sure he was a cellmate of Swindler and how long he had been incarcerated. Her strategy to deal with jailhouse informants was to not give them much attention because she believed jurors did not give them much credence.

Five days before trial, the State forwarded Esparza a letter stating that before making his statement to police, O'Neal had access to trial transcripts and the Supreme Court opinion on Swindler's case that Swindler had in his possession in jail. Esparza did not have an explanation for failing to follow up on that information and failing to ask O'Neal about it at trial.

6

Esparza did not recall whether she had a conversation with Swindler about his right to testify. It was her normal practice to have such a discussion. Swindler testified he would have testified at trial if he had had the opportunity.

The district court denied the motion, finding that Esparza was not ineffective for failing to hire an expert, failing to present text messages, or failing to request another continuance. Esparza did discuss Swindler's right to testify with him outside and inside of court. The court found the absence of any new, different, or contradictory information that would have impeached or excluded O'Neal's testimony. The issue of the district court's denial of the motion for continuance by newly retained counsel was already appealed to this court. The district court concluded: "Simply put, [Swindler] wanted Esparza to look at, search for, find, and use certain information, but fails to make a showing that any of that information existed or was otherwise available."

Swindler timely appeals.

ANALYSIS

Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *State v. Evans*, 315 Kan. 211, 217-18, 506 P.3d 260 (2022).

To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness.

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Strategic choices made by counsel after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strategic choices made after an incomplete investigation can fall within the wide range of reasonable professional assistance if the decision to limit the investigation is supported by reasonable professional judgment. *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021).

In reviewing a district court's decision on claims of ineffective assistance of counsel, appellate courts review the district court's factual findings using a substantial competent evidence standard. Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. *Evans*, 315 Kan. at 218.

*Was Esparza ineffective for failing to impeach L.C.'s credibility with her previous inconsistent statements?*

On appeal, Swindler concedes that Esparza developed a sound trial strategy—to point out the inconsistencies in L.C.'s testimony. The State's case hinged on L.C.'s credibility. Swindler contends that Esparza's failure to carry out her only trial strategy

was per se ineffective assistance of counsel. Esparza did not point out to the jury that L.C.'s testimony at the second trial was inconsistent with her preliminary hearing testimony. At the preliminary hearing, L.C. made no mention of waking up M.M. and then leaving the house that night. At the second trial, she testified she woke up M.M. and that Swindler actually drove her a portion of the way home that night before turning back.

The State contends that Swindler's claim that Esparza was per se ineffective for failing to carry out her trial strategy was not raised below and cannot be raised for the first time on appeal. Swindler also cites no legal authority for his claim that such failure to carry out a strategy is per se ineffectiveness. It was reasonable trial strategy to avoid being overly aggressive toward a child victim. Esparza did point out inconsistencies in L.C.'s story—that L.C. never told M.M. about the rape and that L.C. stayed the night with M.M. and Swindler again after the night of the rape.

In his proposed findings of fact and conclusions of law, Swindler did argue to the district court: "An attorney that elects to pursue a strategy at trial, and then completely fails to implement it, is *per se* ineffective." He cited no authority for this contention.

This claim was not raised in Swindler's K.S.A. 60-1507 motion. The district court addressed only the claim that was raised in Swindler's motion—Esparza's failure to present an expert in forensic psychology to challenge L.C.'s testimony.

Esparza's representation was not per se ineffective. While Esparza did not impeach L.C. with her inconsistent preliminary hearing testimony, Esparza did question L.C. about her actions that were seemingly inconsistent with her claim that she was raped. Specifically, Esparza got L.C. to admit that she had stayed the night with Swindler and M.M. again and otherwise had spent time with them after the rape incident. In her closing argument, Esparza also pointed out that, based on L.C.'s own testimony, she allowed

9

Swindler to attempt to drive her home that night. And Esparza emphasized that M.M.'s testimony contradicted L.C.'s account concerning the rape.

*Was Esparza ineffective for failing to investigate and impeach Brandon O'Neal's testimony?*

Swindler contends that Esparza was ineffective for failing to object to the State's motion to endorse O'Neal, failing to treat O'Neal as a significant witness that needed to be addressed, failing to interview relevant witnesses, failing to get into evidence that O'Neal had access to information about Swindler's case from which he could have fabricated the confession, failing to cross-examine O'Neal about obvious errors in his testimony, and failing to consult with Swindler about testifying in response to O'Neal. Swindler contends that Esparza's failure to investigate O'Neal cannot be deemed trial strategy.

The State contends that there were no grounds to object to the endorsement of O'Neal, that Esparza did investigate O'Neal, that Esparza's trial strategy is entitled to deference, and that Esparza did impeach O'Neal's credibility by asking him about the favorable plea deal he received. Swindler never told anyone that he wanted to testify after the court discussed with him his right to.

Swindler only briefly referenced O'Neal in his K.S.A. 60-1507 motion. The district court addressed only whether Esparza adequately investigated O'Neal. The district court found that Esparza did investigate O'Neal, which was supported by Esparza's testimony. So, Swindler has failed to show what a further investigation would have revealed.

Also, Swindler has failed to show that a motion objecting to O'Neal's endorsement likely would have been granted. See *Khalil-Alsalaami*, 313 Kan. at 498-99. As the district

10

court noted, the order granting the motion to endorse O'Neal as a witness was not an endorsement of O'Neal's credibility.

Here, Esparza impeached O'Neal's testimony without overemphasizing it, as was her trial strategy. Indeed, "'the decisions of whether and how to conduct cross-examination . . . are matters of trial strategy,' provided defense counsel has made an informed decision." *Khalil-Alsalaami*, 313 Kan. at 525 (rejecting claim that trial counsel was ineffective for failing to do more to impeach witness who received a plea deal). A better strategy may have been to treat O'Neal as a substantial witness to be addressed, but this court must avoid using hindsight to question strategic decisions made by counsel. See *Evans*, 315 Kan. at 218.

On cross-examination, Esparza got O'Neal to admit he was facing charges for burglary, theft, and aggravated arson and received a "substantially reduce[d]" sentence in exchange for his testimony. Thus, Esparza was not ineffective in that regard.

Nevertheless, Esparza's lack of an explanation for failing to impeach O'Neal in another regard is troublesome. The district court found that "[a]bsent from the Petitioner's evidence at the evidentiary hearing is any new, different, or contradictory information that would impeach or exclude O'Neal's testimony." But the fact that O'Neal had access to Swindler's court papers while in prison was information that Esparza did not present at trial that would have impeached O'Neal's testimony about whether Swindler had truly confessed to O'Neal that he had raped L.C.

Esparza's failure to question O'Neal or some other witness about O'Neal's access to Swindler's court file was objectively unreasonable. The question of whether O'Neal had an incentive to fabricate his testimony was separate from the question of whether O'Neal could have feasibly fabricated his confession testimony. If O'Neal could have gleaned the details of the State's allegations against Swindler by reviewing documents Swindler had

11

in his prison cell, then O'Neal would not have needed to talk with Swindler about his case. Simply put, O'Neal could have made up Swindler's so-called confession by just reviewing Swindler's prison cell case file.

The district court found that Esparza had discussed with Swindler his right to testify. Substantial competent evidence supports that finding. Esparza did not remember specific conversations she had with Swindler, but it was her normal practice to have such a discussion. The district court informed Swindler of his right to testify during the trial. Swindler did not want to testify at that time. The record reflects that Esparza and Swindler had an off-the-record discussion right before the defense rested. Swindler had an opportunity at that point to assert his right to testify.

*Did Esparza's ineffectiveness prejudice Swindler?*

Swindler contends that there is a reasonable probability the outcome of the trial would have been different if Esparza had done something to combat the testimony of L.C. and O'Neal.

The defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

If Esparza had impeached L.C. with her preliminary hearing testimony, the jury would have heard that some of the details of L.C.'s testimony changed over time. But the jury also would have heard that over the course of five years L.C. consistently testified

12

that Swindler raped her. L.C. consistently testified that she, M.M., and Swindler fell asleep watching a movie and that she awoke with Swindler's finger in her vagina. Swindler has not shown that there is a reasonable probability that Esparza's failure to impeach L.C. with previous inconsistent statements relating to some of the details of the night would have changed the outcome of the proceedings.

Regarding O'Neal's testimony, Swindler has not shown that O'Neal's testimony could have been excluded altogether. Esparza could have done a better job cross-examining O'Neal. But she did get the main point out that O'Neal was an untrustworthy witness and had a major motive to fabricate Swindler's confession. L.C.'s testimony was credible with or without O'Neal's testimony. Considering all the evidence, Swindler has not shown that there is a reasonably probability that Esparza's failure to impeach O'Neal with his access to Swindler's court documents would have changed the outcome of the proceedings.

Affirmed.