NOT DESIGNATED FOR PUBLICATION

No. 127,682

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEDRIN LITTLEJOHN,
*Appellee*,

v.

STATE OF KANSAS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; MIKE WARD, judge. Oral argument held May 20, 2025. Opinion filed June 13, 2025. Affirmed.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellant.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellee.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

MALONE, J.:  A jury convicted Kedrin Littlejohn of felony murder, aggravated robbery, aggravated kidnapping, and aggravated assault for his role in a botched robbery that resulted in the death of a Wichita man. The Kansas Supreme Court upheld Littlejohn's convictions and sentence on direct appeal. Littlejohn's first K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel was denied because the claims were conclusory—he voluntarily withdrew his appeal of that ruling. Littlejohn then filed a second K.S.A. 60-1507 motion which was denied as successive—that decision was later reversed on appeal after this court found that exceptional circumstances justified the

successive motion. On remand, after holding a three-day evidentiary hearing, the district court granted Littlejohn's motion, vacated his convictions and sentence, and ordered a new trial pending this appeal. The district court found that Littlejohn's trial counsel was ineffective for failing to adequately investigate a mental disease or defect defense, either as a complete defense to the charges or to support Littlejohn's compulsion defense at trial, and that Littlejohn was prejudiced by his counsel's deficient performance.

The State now appeals, arguing that the district court's ruling should be reversed because its factual findings were not supported by substantial competent evidence and because the district court misapplied the ineffective assistance of counsel test by failing to show any deference to a strategic decision that trial counsel made after investigating the facts and the law. After thoroughly reviewing the record and carefully applying our standard of review, we find the district court's factual findings were supported by substantial competent evidence and adequately supported the district court's conclusions of law. Thus, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The detailed facts of the events leading to the State's prosecution of Littlejohn were outlined in his direct appeal in *State v. Littlejohn*, 298 Kan. 632, 316 P.3d 136 (2014) (*Littlejohn I*). To provide some context for this appeal, we will summarize the facts. On May 12, 2008, Littlejohn and another man, Shannon Bogguess, went to a used car dealership in Wichita to rob Jim Collins. When Collins resisted, Bogguess shot him in the leg. Bogguess and Littlejohn then forced Collins into the back of a Hummer on the lot, intending to take him to an ATM to make him withdraw money for them. But Collins managed to escape the Hummer, and after Littlejohn and Bogguess unsuccessfully tried to get him back inside, Bogguess shot Collins in the neck/shoulder area and left him in the middle of the street. Littlejohn and Bogguess then got back into the Hummer, with Bogguess in the driver's seat, and sped down the street. The Hummer then turned around,

headed back, and ran over Collins before a witness could pull him out of the way. Emergency personnel soon arrived and pronounced Collins dead.

The State charged Littlejohn and Bogguess with premeditated first-degree murder (or in the alternative felony first-degree murder), aggravated robbery, aggravated kidnapping, and aggravated assault. The State's case against Littlejohn was based on an aiding and abetting theory. Littlejohn was represented by several appointed attorneys, including Kevin Loeffler, but Quentin Pittman represented him at trial. Littlejohn raised a compulsion defense at trial, asserting that Bogguess had forced him to participate in the robbery and kidnapping of Collins at gunpoint. The jury found Littlejohn guilty of felony first-degree murder, aggravated robbery, aggravated kidnapping, and aggravated assault. The district court sentenced Littlejohn to a hard 20 life sentence for murder and a consecutive 277-month sentence for the remaining convictions. The Kansas Supreme Court affirmed Littlejohn's convictions and sentence. 298 Kan. at 632.

Littlejohn filed a K.S.A. 60-1507 motion in which he alleged that he had received ineffective assistance of trial counsel. The district court denied the motion as conclusory in nature, and Littlejohn voluntarily withdrew an appeal of that ruling. Littlejohn filed a second K.S.A. 60-1507 motion in which he made several arguments including that he had received ineffective assistance of trial counsel because his attorney had failed to investigate and/or use a mental disease or defect defense. The district court summarily denied the motion as successive. Littlejohn appealed and a panel of this court reversed and remanded "for a hearing on the issue of whether counsel was ineffective for failing to investigate Littlejohn's mental capacity defense." *Littlejohn v. State*, No. 115,904, 2017 WL 2833312, at *10 (Kan. App. 2017) (unpublished opinion) (*Littlejohn II*).

On review, the Kansas Supreme Court found that the *Littlejohn II* panel had applied an incorrect standard in determining whether the district court should have considered Littlejohn's successive motion. *Littlejohn v. State*, 310 Kan. 439, 446, 447

3

P.3d 375 (2019) (*Littlejohn III*). Our Supreme Court instructed that on remand the panel's inquiry had to focus on whether "Littlejohn had presented exceptional circumstances to justify reaching the merits of the motion, factoring in whether justice would be served by doing so." 310 Kan. at 446.

On remand, this court again determined that Littlejohn had demonstrated exceptional circumstances. *Littlejohn v. State*, No. 115,904, 2020 WL 111292 (Kan. App. 2020) (unpublished opinion) (*Littlejohn IV*). The panel explained:

> "Littlejohn was 18 years old when the senseless and horrific murder for which he was convicted occurred. He was sentenced to life in prison plus 277 months. With a diagnosis of mental retardation, charges based solely on an aiding and abetting theory, and a defense of compulsion we believe justice would be served by an evidentiary hearing to determine whether Littlejohn's trial counsel's performance was ineffective and whether Littlejohn was prejudiced by it." 2020 WL 111292, at *5.

*Evidentiary hearing on ineffective assistance of counsel claim*

At the three-day evidentiary hearing on remand, Littlejohn presented testimony from several attorneys who had worked on his case—including his trial counsel, Pittman—and various mental health professionals who had evaluated him over the years. We will summarize the evidence presented at the hearing.

Kevin Loeffler, who represented Littlejohn for about a year during the pretrial phase, recalled that he noticed that Littlejohn had difficulty communicating and understanding basic concepts. After Littlejohn's mother told him that Littlejohn had previously been evaluated for an intellectual disability and suffered auditory hallucinations, Loeffler sought a professional evaluation of Littlejohn's mental capacity. That report, performed by Mitchell Flesher, Ph.D., a psychologist who also has a law degree, concluded that Littlejohn had an IQ of approximately 71, which placed him in the

4

3rd percentile—on the borderline range of mental impairment. The report also stated that "Littlejohn's overall intellectual functioning is within low borderline range. . . . [W]ithin the range considered mental or mild mental retardation." Flesher explained that Littlejohn's impairment was significant and that it was evident from the moment he met him. Flesher testified that Littlejohn's "deficits were significant enough that I commented on them, in terms of his understanding of the custodial integration [*sic*] process. And so I think that that has relevance to other areas as well, including competency and mental state at the time." After receiving Flesher's report, Loeffler moved to suppress, arguing Littlejohn's mental incapacity rendered his police interrogation involuntary.

Loeffler also requested a competency evaluation to determine whether Littlejohn could stand trial. That report concluded that although Littlejohn needed someone to explain various aspects of the legal process, he was legally competent to stand trial. But the evaluator noted that it "may be helpful to have [additional] IQ testing completed on Mr. Littlejohn to better understand his level of intellectual functioning."

Based on these reports of Littlejohn's limited mental faculties, Loeffler expected that he would employ both a compulsion defense—based on Littlejohn's assertion that Bogguess forced him to participate in the criminal activity—and a mental disease/defect defense—based on Littlejohn's limited intellectual function and apparent inability to understand what was going on. He anticipated calling Flesher to testify both at the hearing on the motion to suppress and at trial. But because of a developing conflict with Littlejohn, Loeffler withdrew from the case before the motion to suppress was argued.

Pittman began representing Littlejohn after Loeffler's withdrawal and represented Littlejohn through the trial. Pittman recalled that he received the psychological reports suggesting Littlejohn's significant intellectual impairment early in his representation. These reports included both evaluations ordered by Loeffler and an older psychological evaluation. The older evaluation, which had been performed in 2006 by Dr. Parrish,

concluded that Littlejohn had an even lower IQ of 49. Pittman also had the competency evaluation that suggested further testing of Littlejohn's intellectual functioning could be helpful, but he thought that Flesher's report was sufficient and concluded that any evidence of Littlejohn's mental impairment was not applicable to his defense. Based on his interactions with Littlejohn, Pittman did not think that Littlejohn appeared to be as "feeble" as the evaluations had concluded. Pittman recalled that Littlejohn was "well-spoken" and an "intelligent young man."

Pittman presented Flesher as an expert at the suppression hearing to testify about the results of his examination of Littlejohn, but the motion was unsuccessful. Pittman did not discuss the potential of raising the issue of Littlejohn's mental impairment any further—he claimed he spoke about the defense of compulsion with Flesher but did not consider presenting expert testimony on the matter at trial.

When asked why he had not had Littlejohn's mental capacity further evaluated, Pittman explained that Littlejohn told him that he understood what was going on during the incident, so he concluded that a mental defect argument was simply inapplicable. Pittman clarified that the extent of his investigation into a potential mental defect defense was reviewing the previously completed evaluations; he did not think any further evaluation would be relevant or beneficial. Pittman added that he generally disfavored mental defect defenses: "[A]s a rule, I don't think that that defense is ever effective. And so, as a rule, I don't favor it." Similarly, Pittman stated that he did not think Littlejohn's school records displaying his low functioning were "particularly persuasive," so he decided not to seek any other documentation of Littlejohn's mental capacity. Pittman asserted that he talked to Littlejohn's mother about the case, but he acknowledged that he never discussed the possibility of presenting a mental disease or defect defense at trial with Littlejohn during their limited pretrial meetings.

6

Pittman focused his entire defense of Littlejohn on a theory of compulsion—that is, that Littlejohn was forced to participate by his codefendant, Bogguess—and decided not to pursue the issue of mental impairment. Pittman clarified that he believed it would be inconsistent with the compulsion defense to present evidence of Littlejohn's potential mental impairment. Pittman testified that he thought Littlejohn "understood what was occurring, that he acted intentionally, and he did so because he was in fear for his life."

Both Loeffler and Littlejohn's appellate counsel, Catherine Zigtema, expressed doubts about Pittman's decision not to pursue the issue of Littlejohn's mental impairment—both as it related to the potential defenses of mental defect or compulsion and for sowing doubt about whether Littlejohn had the specific intent to commit some of the charged crimes. When asked whether he believed that evidence of Littlejohn's limited mental capacity defense was central to the case, Loeffler stated:

> "Well, one, it could help towards the elements of the specific intent elements. And, two, it also helps humanize your client to the jury. I would get a lot of his background information in front of the jury, so that they would know that this isn't just some, you know, some 18-year-old kid that decided to do something, that this is a kid that's been, you know, basically, in and out of the system his whole life. He's low functioning. He can easily be led or misled by another person who wants use him. And I wanted to get that in front of the jury, because I believed all that was relevant to the jury, to fully understand what went on that day. And without having that information in the front of them, I don't see how they could make a fair decision as to whether or not Mr. Littlejohn was, you know, competent or capable, or actually involved in that crime at all. So I thought it was extremely important, and my intention was to put it on at trial."

Loeffler testified that he did not "understand why [Pittman] would not have put on [a mental capacity] defense." When asked if Pittman's decision not to pursue the defense was simply a difference in trial strategy, Loeffler replied,

7

"I believe when you are not bringing in experts when they need to be brought it, I'm not sure if that's trial strategy or if that's something else.

. . . .

"If all you do is do a summary investigation or no investigation at all, then I really don't know how that is trial strategy. I think that might just be[] failure to properly represent the client."

Zigtema similarly testified that evidence of Littlejohn's mental capacity could have been presented to "offer some basis to the jury to explain whether or not he was a willing participant, or someone who does not have the capacity to understand what he was doing or how to get out of that situation." And she also testified that, at the very least, a more thorough investigation into Littlejohn's impairment was warranted based on the reports that were available to Pittman. Zigtema thought that presenting evidence of Littlejohn's mental impairment could have impacted both the trial and the direct appeal.

The psychologists who evaluated Littlejohn also believed his intellectual disability was an important factor in contextualizing his actions. Flesher stated that evidence of Littlejohn's impairment could have supported a compulsion defense because a person with lower functioning would be more susceptible to being persuaded to act. Marilyn Hutchinson, Ph.D., a psychologist who evaluated Littlejohn for the K.S.A. 60-1507 hearing, thought Littlejohn's intellectual disability was readily apparent and could have helped explain his actions. Hutchinson concluded:

"[A] jury would have been helped by receiving some kind of information about his mental disease and defect of mental retardation, that had they understood the characteristics of his mental disability, they would have been able to apply that to a compulsion defense and have understood in a much more significant way his behavior at that time, and that based on his intellectual disability, planning that particular actions with the co-defendant was—was pretty highly unlikely. It would have involved too much abstract thinking that I didn't believe he would be capable of doing."

8

Littlejohn testified briefly about his interactions with Pittman. He testified that he only met with Pittman once or twice before the trial. Littlejohn did not recall Pittman ever discussing with him the prospect of putting his mental health issues into evidence at trial. Captain Paula Smith, a records custodian at the Sedgwick County Detention Facility, testified that the jail visitation logs showed that Pittman had two professional visits with Littlejohn before the trial; one visit for 13 minutes and the other visit for about an hour.

The State presented testimony from Ann Swegle, the prosecutor who handled Littlejohn's case. Swegle testified that she was not surprised that Pittman did not put on evidence of Littlejohn's mental impairment. That said, she agreed that Littlejohn's mental capacity would have been relevant to provide context to the compulsion defense.

> "Q. [LITTLEJOHN'S COUNSEL]:  In your mind then, mental capacity—Mr.
> Littlejohn's mental capacity would definitely be relevant to the compulsion defense.
> "A. [SWEGLE]:  Sure."

*The district court's ruling*

The district court issued its 16-page written order on April 2, 2024. The district court summarized the evidence presented at the hearing and noted that Loeffler, Zigtema, Flesher, and Hutchinson all felt that evidence of Littlejohn's mental deficits could have bolstered a compulsion defense as it "might have helped explain why Littlejohn believed he would be killed or seriously harmed by Bogguess if he did not go along." The district court explained that evidence of Littlejohn's limited mental faculties could have been used to argue that "some of the offenses were not reasonably foreseeable by Littlejohn. And it would have provided grounds on which to request lesser offense instructions."

The order stated:  "Considering all the circumstances, including the record made at the [K.S.A.] 60-1507 evidentiary hearing, this Court concludes that trial counsel Pittman's failure to fully investigate and present a mental disease/defect defense in this

9

cased fell below an objective standard of reasonably effective representation." As to Pittman's opinion that evidence of Littlejohn's mental deficiencies would have been inconsistent with his compulsion defense, the district court disagreed and stated: "Rather than cutting against the defense of compulsion, evidence of mental deficiency may well have bolstered it." As to whether Pittman's decision to forgo presenting any evidence of Littlejohn's mental deficiencies was a reasonable trial strategy, the district court stated:

> "While it is true that trial attorneys have considerable leeway in their strategic decisions, those decisions cannot fly in the face of sound legal reasoning. Pittman expressed his strong disfavor of the mental disease/defect defense. And his perspective may be well founded. But his distrust of the mental disease defense (it never works) should not have stopped him from considering how his client[']s documented intellectual deficits might support various aspects of what he was trying to achieve in his defense. Objectively reasonable and effective representation would have dictated that Pittman discuss with Littlejohn the possibility of presenting the defense. The information needed to go forward with the defense was either available or readily obtainable."

Turning to the prejudice prong of the analysis, the district court found:

> "This Court further concludes that but for the deficient performance of trial counsel there is a reasonable probability that the outcome of Littlejohn's trial would have been different. . . . [T]his Court finds[] that the probability of a different result is 'sufficient to undermine confidence in the outcome [of the trial].'"

Based on its findings, the district court granted Littlejohn's K.S.A. 60-1507 motion, vacated his convictions and sentence, and ordered a new trial. But the district court ordered Littlejohn to remain in custody pending the scheduling of a new trial. The State timely appealed the district court's judgment.

ANALYSIS

The State argues that the district court's ruling should be reversed because its factual findings were not supported by substantial competent evidence and because the district court misapplied the ineffective assistance of counsel test by failing to show any deference to a strategic decision that trial counsel made after investigating the facts and the law. The focus of the State's argument is that because Pittman testified that he made a strategic decision not to present evidence of Littlejohn's mental deficiencies after investigating the issue, his decision should be "virtually unchallengeable," and it does not matter whether other attorneys would have chosen the same path. The State also argues that the district court failed to explain how Pittman's performance prejudiced Littlejohn.

Littlejohn asserts the district court's decision is supported by the evidence, it used the correct legal standard, and the State is asking this court to reweigh the evidence. He argues Pittman's performance was constitutionally deficient in failing to properly investigate a mental disease or defect defense, not only as a complete defense to the charges but also to support the compulsion defense at trial. Littlejohn asserts the district court adequately explained how he was prejudiced by Pittman's deficient performance.

*Standard of review*

The standard of review is a critical component in appellate court decisions because it defines the level of deference an appellate court gives to the decisions made by the district court. It guides how the appellate court assesses whether the district court made errors and what kind of errors justify reversal or modification of a decision. It is not this court's function to decide whether Littlejohn should receive a new trial based on ineffective assistance of trial counsel, as that decision has already been made by the district court. Our role is only to decide whether the State has shown to us that the district court's decision is somehow legally erroneous and must be reversed or modified. By

11

providing consistency and predictability in appellate review, the standard of review promotes fairness, judicial efficiency, and the integrity of the legal process.

An ineffective assistance of counsel claim presents mixed questions of law and fact. When a district court holds a full evidentiary hearing on such a claim raised in a K.S.A. 60-1507 motion, an appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). An appellate court reviews the district court's legal conclusions based on the facts applying a de novo or unlimited standard of review. *Evans*, 315 Kan. at 218.

*Legal principles governing an ineffective assistance of counsel claim*

The State and Littlejohn agree that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. *State v. Moyer*, 309 Kan. 268, Syl. ¶ 1, 434 P.3d 829 (2019). Claims of ineffective assistance of trial counsel are analyzed under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that counsel's performance was deficient. The court then moves to the second prong to decide whether there is any prejudice; that is, whether there is a reasonable probability that, absent counsel's deficient performance, the result would have been different. *Evans*, 315 Kan. at 217-18.

To establish deficient performance under the first prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be

highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Strategic choices made by counsel after a *thorough investigation* of the law and facts relevant to plausible options are virtually unchallengeable. But strategic choices made by counsel after an *incomplete* investigation can be deemed reasonable only if the decision to limit the investigation is supported by reasonable professional judgment. *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021).

Under the second prong, the defendant must show that counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

*Has the State shown to us that the district court's decision must be reversed or modified?*

The focus of the district court's ruling was that Pittman failed to thoroughly investigate Littlejohn's mental impairment and deficiencies, either as a complete defense to the charges or to support the compulsion defense offered to the jury at trial. The State contends that the district court's factual finding that Pittman failed to fully investigate

13

Littlejohn's mental capacity and the applicability of a mental disease/defect defense is unsupported by the record. As noted above, this court reviews a district court's factual findings to determine whether they are supported by substantial competent evidence.

When asked how he investigated the mental disease defense, Pittman explained that he talked with Littlejohn's mother and Flesher, and that he reviewed the previously completed psychological evaluations. Pittman conceded that he did not talk with Littlejohn about the defense or presenting evidence of his mental impairment because he thought that Littlejohn knew what he was doing. And Pittman stated that he did not seek out further psychological evaluations of Littlejohn's intellectual functioning "based upon [his] interactions with Littlejohn and Dr. Flesher." But Pittman clarified that he did not speak about Littlejohn's impairment with Flesher "in any great depth."

Although Littlejohn was found competent to stand trial, the evaluator expressly recommended additional testing on Littlejohn to better understand his level of intellectual functioning. Loeffler and Zigtema both felt that the psychological reports should have led Pittman to conduct a more thorough investigation of Littlejohn's mental impairment. In short, the district court's factual findings about the extent of Pittman's investigation into Littlejohn's mental impairment are supported by substantial competent evidence. The real question turns on the district court's legal conclusion that Pittman's efforts fell below an objective standard of reasonably effective representation.

It is undisputed that an attorney's strategic decisions made after a thorough investigation of the law and the facts are virtually unchallengeable. *Hutto*, 313 Kan. at 750. But "'"[m]ere invocation of the word 'strategy' does not insulate the performance of a criminal defendant's lawyer from constitutional criticism," especially "when counsel lacks the information to make an informed decision due to inadequacies of his or her investigation."'" *Sola-Morales v. State*, 300 Kan. 875, 887, 335 P.3d 1162 (2014).

14

At the time that Pittman decided not to pursue evidence of Littlejohn's mental impairment because he thought it was inapplicable to his theory of defense, he had reviewed Flesher's report, Parrish's report, and the competency evaluation—each of these reports concluded, or at least suggested, that Littlejohn had some level of intellectual disability. The competency evaluation specifically noted that additional evaluations would be helpful to determine the extent of Littlejohn's impairment, and Flesher's report referenced Littlejohn's documented history of having special needs while in school. Pittman also had spoken with Littlejohn's mother, who expressed concerns about her son's intellectual impairment. Despite these indications, Pittman did not seek additional evaluations of Littlejohn by any expert and did not seek out easily obtainable school records documenting Littlejohn's history of intellectual disability.

Pittman's decision not to investigate or present potential evidence of Littlejohn's intellectual functioning was largely based on (1) his general disfavor of the mental disease/defect defense and (2) his purported belief that such evidence was inconsistent with a compulsion defense. As to the first reason, the district court succinctly explained that Pittman's distrust of the defense, regardless of whether it was based on his experience as a defense attorney "should not have stopped him from considering how [Littlejohn's] documented deficits might support various aspects of what he was trying to achieve in his defense." As to the second reason about inconsistent defenses, the district court disagreed and stated:  "Rather than cutting against the defense of compulsion, evidence of mental deficiency may well have bolstered it."

Loeffler and Zigtema both expressed a view that Pittman's failure to more thoroughly investigate Littlejohn's mental impairment fell below an objective standard of reasonableness. Loeffler expressed that Pittman's decision to not bring in any additional experts on Littlejohn's mental impairment—let alone his failure to present such evidence at trial—was inexplicable. Beyond the failure to conduct any independent investigation, Loeffler and Zigtema believed that additional investigation into Littlejohn's apparent

15

disability could have produced evidence that would have helped explain that Littlejohn did not have the specific intent to commit some of the charged crimes, would have helped humanize Littlejohn to the jury, and could have bolstered the compulsion defense. These sentiments were echoed by the psychologists who testified at the evidentiary hearing.

The State's argument on appeal almost completely ignores a central basis for the district court's conclusion that Pittman's investigation was deficient: Evidence of Littlejohn's mental deficits could have bolstered the compulsion defense. The State prosecuted Littlejohn under an aiding and abetting theory. The evidence established that Bogguess shot Collins twice and ran over him with the Hummer. The extent of Littlejohn's participation in the crimes and whether it was intentional and voluntary was the only issue at the trial. Littlejohn raised a compulsion defense to the charges.

Flesher testified that evidence of Littlejohn's impairment could have supported a compulsion defense because a person with lower functioning would be more susceptible to being persuaded to act. Hutchinson testified that "a jury would have been helped by receiving some kind of information about [Littlejohn's] mental disease and defect . . . they would have been able to apply that to a compulsion defense and have understood in a much more significant way his behavior at that time." Loeffler testified that he planned to use Flesher's report to help support a compulsion defense at trial. Zigtema testified that evidence of Littlejohn's mental capacity could have been presented to "offer some basis to the jury to explain whether or not he was a willing participant, or someone who does not have the capacity to understand what he was doing or how to get out of that situation." Even the prosecutor, Swegle, readily agreed that evidence of Littlejohn's mental capacity would have been relevant to the compulsion defense.

The jury never heard evidence that Littlejohn's IQ was approximately 71, within the range considered "mild mental retardation," with some testing showing an IQ of 49. The jury was asked to decide whether Littlejohn intentionally and voluntarily participated

16

in the charged crimes without receiving any information about his intellectual capacity. As Loeffler testified, "without having that information in the front of them, I don't see how they could make a fair decision as to whether or not Mr. Littlejohn was, you know, competent or capable, or actually involved in that crime at all."

The State asks us to compare Littlejohn's case with the facts in *Sprague v. State*, No. 121,535, 2021 WL 302086 (Kan. App. 2021) (unpublished opinion). In that case, Sprague moved for relief under K.S.A. 60-1507 and faulted his trial counsel for failing to investigate and present a mental disease or defect defense. The evidence showed that counsel had reviewed existing reports on Sprague's mental competency and decided not to raise the defense. The district court denied Sprague's motion, and this court affirmed that decision, agreeing with the district court that counsel had conducted a sufficient investigation of the defense. 2021 WL 302086, at *7.

The State acknowledges that *Sprague* is distinguishable because in that case the movant had been specifically evaluated for a mental defect defense, whereas Littlejohn's mental competency had only been evaluated to support a motion to suppress his statements to the police. *Sprague* also does not involve a situation where the defendant's mental capacity would have been relevant to an asserted compulsion defense at trial.

Littlejohn argues that a better case is *Spangler v. State*, No. 120,137, 2020 WL 1222954 (Kan. App. 2020) (unpublished opinion). In that case, Spangler was convicted of second-degree murder and his conviction was affirmed on direct appeal. Spangler moved for relief under K.S.A. 60-1507 and argued that his trial counsel's performance was deficient for failing to investigate Spangler's mental health and failing to have him evaluated by a mental health expert. A psychologist testified that Spangler was diagnosed with post-traumatic stress disorder (PTSD) and the condition could have played a role in his actions on the night of the shooting. An attorney with the Kansas Capital Habeas Office testified as an expert witness and opined that Spangler's mental health status

should have been raised by trial counsel to support the request for the lesser included offense instruction on voluntary manslaughter. Spangler's trial counsel testified that after reviewing all the discovery produced by the State, he believed that the best strategy would be to attempt to justify the shooting as self-defense. He also testified that he did not think that PTSD would be a defense to the crime itself.

After hearing the evidence, the district court granted Spangler's K.S.A. 60-1507 motion and ordered a new trial. This court affirmed that ruling on appeal, concluding there was substantial evidence to support the district court's finding that trial counsel's performance was deficient based on the totality of the circumstances. 2020 WL 1222954, at *9. This court also concluded that it was reasonable for the district court to find that counsel's deficient performance resulted in prejudice to Spangler and undermined confidence in the outcome of the trial. 2020 WL 1222954, at *10.

Although *Sprague* and *Spangler* are similar to the situation presented here, neither case helps us resolve the issue in this appeal as each case turns on its particular facts. But we observe one common thread in the two cases: In each case this court affirmed the district court's ruling based on the evidence under our applicable standard of review.

In sum, we agree with the district court that Pittman could not reasonably evaluate whether evidence and expert testimony about Littlejohn's impairment applied to Littlejohn's defense—be it based on a theory of compulsion or mental disease/defect— because he never meaningfully consulted an expert about the matter. Without conducting a more thorough investigation, Pittman could not make a reasonably informed decision about the pros and cons of presenting such evidence at trial. Because Pittman decided not to pursue evidence about Littlejohn's intellectual impairment without having performed a thorough investigation into the matter, his strategic decision is not, as the State asserts, unchallengeable. We conclude the district court did not err in finding from all the

18

circumstances that Pittman's failure to fully investigate and present a mental disease or defect defense fell below an objective standard of reasonably effective representation.

Finally, the State contends the district court failed to conduct any "meaningful analysis of the prejudice prong" of the *Strickland* test. After finding that Pittman's representation fell below an objective standard of reasonableness, the district court determined that his deficient performance prejudiced Littlejohn:

"[B]ut for the deficient performance of trial counsel there is a reasonable probability that the outcome of Littlejohn's trial would have been different. . . . Jury trials can be unpredictable for a variety of reasons. Jurors don't always see things the way the lawyers do. And thus, it cannot be said with certainty that a mental disease/defect defense would have been successful. However, it can be said, and this Court finds, that the probability of a different result is 'sufficient to undermine confidence in the outcome.'"

The prejudice prong of the ineffective assistance of counsel standard is shown if it can be said that there is a "reasonable probability" that the proceeding's outcome would have been different had the representation been adequate. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218. The *Strickland* Court explained that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." 466 U.S. at 693. Rather, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." 466 U.S. at 694.

While the portion of the district court's ruling addressing the prejudice prong is scant, the court explained its rationale throughout the order and identified several ways in which it believed evidence of Littlejohn's intellectual impairment could have impacted the jury's ultimate verdict. The evidence could have helped "humanize" Littlejohn and shown the jury that he was easily "misled or compelled" in order to support a compulsion

19

defense. The district court also noted that evidence of Littlejohn's mental deficiency could have helped negate the specific intent of the underlying felonies supporting the felony murder charge by suggesting that Littlejohn could not plan the crimes or foresee the potential consequences of his actions, and the evidence could have provided grounds for lesser offense instructions. Contrary to the State's assertions, the district court sufficiently explained why Pittman's deficient performance undermined its confidence in the jury's ultimate verdict. We conclude the district court did not err in finding that Pittman's ineffective representation prejudiced Littlejohn.

## CONCLUSION

While Collins' senseless murder underscores the gravity of this case, our role as an appellate court is to ensure the legal process was properly followed and constitutional standards were upheld. The Constitution requires a fair trial for the accused with the effective assistance of counsel. The district court conducted a comprehensive three-day evidentiary hearing and issued detailed factual findings and legal conclusions. We are bound to apply the established standard of review, which requires deference to the district court's factual findings when supported by substantial competent evidence and mandates an independent assessment of legal conclusions. Upon review, we find that the district court's factual findings were supported by substantial competent evidence and that the district court properly applied the governing legal standards to determine that Littlejohn received ineffective assistance of trial counsel which prejudiced the outcome of his case. The State has failed to show to us that the district court erred in granting Littlejohn's K.S.A. 60-1507 motion, vacating his convictions and sentence, and ordering a new trial.

Affirmed.